## UNITED STATES v. WEST VIRGINIA POWER CO.

### No. 4164.

Circuit Court of Appeals, Fourth Circuit.

Aug. 6, 1937.

Warren E. Magee, Sp. Atty., Department of Justice, of Washington, D. C., and Allan D. Jones, Sp. Asst. to Atty. Gen. (H. L. Snyder, Sp. Asst. U. S. Atty., of Charleston, W. Va., and James E. Reid, Sp. Atty., Department of Justice, of Washington, D. C., on the brief), for appellant.

Jesse Knight, of New York City, and Newton D. Baker, of Cleveland, Ohio (Raymond T. Jackson, of Cleveland, Ohio, M. F. Millikan, of New York City, and Campbell, McClintic & James, of Charleston, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from an order of the District Court of the United States for the Southern District of West Virginia, sustaining the demurrer of the West Virginia Power Company and dismissing the petition of the United States of America for the condemnation of certain lands in Summers county, state of West Virginia, for use in the Bluestone Reservoir Project, involving the construction of a dam and reservoir alleged to be for flood control, river improvement, and navigation purposes. The project is located on the New river, a tributary of the Kanawha river, near Hinton, W. Va.

The petition of the government, herein referred to as the petitioner, was filed in

the court below against the appellee, West Virginia Power Company, a corporation herein referred to as the power company, and others, and sought to acquire by condemnation proceedings certain lands described in the petition. The power company owned a large part of the lands, so sought to be condemned, which it was claimed by the power company had been acquired and were held by it for water power purposes. The power company demurred to the petition for condemnation. The demurrer was sustained by an order of the court entered November 16, 1936, with leave to the appellant to amend its petition. No amended petition was filed and on February 12, 1937, an order was entered dismissing the petition, from which order the appellant has taken this appeal.

The petition sought the condemnation of certain lands, more particularly described in the petition, under the provision of an Act of Congress approved August 1, 1888 (25 Stat. 357 [40 U.S.C.A. §§ 257, 258]), an Act of Congress approved July 18, 1918 (40 Stat. 911, §§ 5, 6), title 2 of an Act of Congress approved June 16, 1933 (48 Stat. 200 [40 U.S.C.A. § 401 et seq.]), known as the National Industrial Recovery Act, a Joint Resolution of Congress approved April 8, 1935 (49 Stat. 115 [15 U.S.C.A. § 728 note]), known as the Emergency Relief Appropriation Act of 1935, and by virtue of Executive Order No. 7183-A, September 12, 1935.

It is contended on behalf of the petitioner that the Bluestone Reservoir Project was included in a comprehensive program of public works prepared by the Federal Emergency Administrator of Public Works under the direction of the President of the United States in accordance with the provisions of section 202 of the National Industrial Recovery Act approved June 16, 1933 (40 U.S.C.A. § 402), and that the President had authorized and directed the Secretary of War, through the Chief of Engineers, United States Army, to proceed with the construction of the project in accordance with the report of the Chief of Engineers submitted to the Congress on June 29, 1935, and had allocated $1,000,000 for its construction, out of which sum $800,000 was allocated for the acquisition, by purchase, condemnation, or otherwise, of lands necessary for the project.

The power company contended that no part of the proposed project had been constructed and no land therefor had been acquired by the government and demurred to the petition upon the ground that it failed to show that any officer of the United States had been authorized by Congress to procure any real estate for the construction of the Bluestone Reservoir Project; that such congressional authority may not be found in the National Industrial Recovery Act of June 16, 1933, or the Emergency Relief Appropriation Act of April 8, 1935, for the reason that such acts are severally unconstitutional and void in that each of them fails to establish any adequate legislative standard to guide the officers charged with its administration and endeavors unlawfully to delegate to the President legislative power in contravention of the Constitution by attempting to confer upon him power to select and construct such projects as he might choose in his uncontrolled discretion.

The sole question involved is whether the acquisition of the lands described in the petition is the lawful exercise of a proper governmental function by the petitioner.

The petitioner contends:

1. That the Secretary of War has been lawfully authorized to procure the real estate described in the petition.

2. That the Act of Congress approved June 16, 1933, and the Act of Congress approved April 8, 1935, are constitutional and that the acts of the President, the Federal Emergency Administrator of Public Works, and the Secretary of War thereunder are valid.

It is contended on behalf of the power company:

1. That the Acts of August 1, 1888, and July 18, 1918, do not confer a general authority to acquire land, but only authority to institute condemnation proceedings in furtherance or in execution of authority otherwise granted to procure real estate for public purposes.

2. That the necessary authority to acquire real estate under either of the foregoing statutes is legislative in character and may not be granted by the Executive but only by Congress.

3. That neither NIRA nor ERA constitutes congressional authority "to procure real estate" for the Bluestone Reservoir Project within the requirements of the Acts of August 1, 1888, and July 18, 1918, and that, therefore, the government is remitted to Executive Order No. 7183-A as sole authority for the construction of the project

and the maintenance of the condemnation proceedings.

4. That said Executive Order is not sufficient authority for the project and the condemnation proceedings because (1) if it is not an exercise of legislative power, it is insufficient; and (2) if it is an attempt to exercise legislative power, it is void because any attempt so to delegate legislative power is unconstitutional.

As to the first point relied upon on behalf of the power company, that the authority to acquire land by condemnation proceedings must be given by authorization of Congress, we are of the opinion that such authorization has been given, at least by necessary implication and that this is sufficient.

The Act of August 1, 1888 (25 Stat. 357 [40 U.S.C.A. §§ 257, 258]), and the Act of July 18, 1918 (40 Stat. 911), authorized the institution of condemnation proceedings in furtherance or in execution of authority granted elsewhere to procure real estate for public purposes.

Under the provisions of House Document 308 (69th Congress 1st Session), which was enacted into law with modifications in section 1 of the River and Harbor Act of January 21, 1927 (44 Stat. 1010), and under the provisions of section 10 of the Flood Control Act approved May 15, 1928 (45 Stat. 534, 538 [33 U.S.C.A. § 702j]), the Chief of Engineers of the United States Army, through the Secretary of War transmitted to Congress on January 29, 1935, a report recommending the construction of the Bluestone Reservoir Project. On February 1, 1935, this report of the Chief of Engineers was ordered to be printed and is now in Public Document known as House Document 91 (74th Congress 1st Session).

In this report the Chief of Engineers discusses the Bluestone Project at length and sets out that the project is economically justifiable. The report further shows that the division engineer concurs in this recommendation, that the Mississippi River Commission finds and concludes that the construction of the Bluestone Reservoir for the combined purposes of local flood control and water power would be of great benefit as relating to a complete system of storage reservoirs in the basin of the Kanawha river, and that the Board of Engineers for Rivers and Harbors recommended the construction of the project in the interest of flood control, navigation and power production.

It is apparent that all the requirements of the usual and established policy of Congress with respect to such improvements have been complied with and that this project was therefore a proper project for inclusion within the comprehensive program of public works authorized to be prepared under title 2 of the National Industrial Recovery Act.

The President, pursuant to the authority conferred upon him by the NIRA, by Executive Order No. 7183-A has designated the Secretary of War as the authority to construct the Bluestone Reservoir Project and to acquire the lands necessary for such construction. It is strongly contended on behalf of the power company that this authority is not sufficient. We do not think this contention can be maintained. Congress in the NIRA authorized the President to create the Federal Emergency Administration of Public Works, the administrator of which was to prepare a comprehensive program of public works. This was done and the project here in question was included in the program prepared and in section 203(a) of NIRA (40 U.S.C.A. § 403(a) it is provided that the President is authorized to construct any public works project included in the program and to acquire by purchase or condemnation any real or personal property in connection with the construction of such project. The Emergency Relief Appropriation Act of April 8, 1935, provided that the Federal Emergency Administration of Public Works should be continued until June 30, 1937, and authorized it to perform such functions under title 2 of the NIRA as might be authorized by the President.

This same contention was considered by the United States Court of Appeals for the District of Columbia in Potomac Electric Power Company v. United States, 85 F. (2d) 243, 246, wherein the court said:

"We think the authority of the Secretary of the Treasury, under the National Industrial Recovery Act and the acts of the Federal Administration of Public Works established thereunder, to acquire, through the power of eminent domain, the property of the defendant, cannot be successfully challenged, nor can the authority of the President, who was empowered to have prepared 'a comprehensive program of public works' which was to include 'any projects of the character heretofore constructed or carried on * * * directly by public authority,' and to acquire by eminent domain

614

any real property in connection therewith, be successfully assailed."

Thus we find that Congress authorized the preparation of the comprehensive program of public works and authorized the President to designate the authorities to construct certain projects included in the program and to acquire the lands necessary for them. All this was done pursuant to the Acts of Congress.

In the case of United States v. Arizona, 295 U.S. 174, 55 S.Ct. 666, 79 L.Ed. 1371, will be found a discussion of the question of the established practice of Congress in authorizing projects similar to the one here involved and the opinion of the Supreme Court in that case would seem to clearly justify the course here pursued.

It is contended on behalf of the power company that the Acts of Congress known as the NIRA and ERA are void as attempting an unconstitutional delegation of legislative power. A majority of this court, in Greenwood County v. Duke Power Company, 81 F.(2d) 986, found that there was no unconstitutional delegation of legislative power in NIRA with respect to public works projects, but it is not necessary to decide this point here.

Congress by the Act of June 22, 1936 (49 Stat. 1570, 1586), expressly ratified what had been done with reference to this project and we take judicial cognizance of this act, which went into effect after the filing of the petition here but before the entry of the final order dismissing the petition.

This act contains the following provision:

"Reservoir system for the reduction of Ohio River floods below Pittsburgh: Construction of reservoirs including the completion of the Bluestone Reservoir now under way, which together with the reservoirs for Pittsburgh flood control, constitutes a comprehensive plan for flood control on the main stream of the Ohio River and on the tributary stream below the reservoirs, as set forth in House Document Numbered 306, Seventy-fourth Congress, first session; estimated construction cost $19,616,800; estimated cost of lands and damages, $10,519,600."

Here we find a ratification by Congress, an express declaration that the project was then under way, an approval of the estimated cost of the completed work, and, at least by necessary implication, if not by express grant, authority to condemn the required land.

The effect of such congressional enactment was considered by the Supreme Court in the very recent cases of Isbrandtsen-Moller Co., Inc., v. United States et al., 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562, and Swayne & Hoyt, Ltd., et al. v. United States, 300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659. It was held in those cases that any question of delegation of power by Congress to the President was rendered moot by subsequent recognition by Congress of the action taken and that Congress may ratify acts "which it might have authorized."

The project here under consideration has been carefully considered by the proper governmental agencies and duly authorized by the legislative and executive branches of the government. It has been approved as a proper and necessary aid to flood control, navigation, and the production of water power. It is seemingly justified from every standpoint and the condemnation proceeding was lawful.

The order of the court below is accordingly reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.