## UNITED STATES v. WEST VIRGINIA POWER CO. et al.

### No. 13.

District Court, S. D. West Virginia, at Bluefield.

July 1, 1941.

Lemuel R. Via, Dist. Atty., of Huntington, W. Va., Ralph J. Luttrell, Sp. Atty., Department of Justice, of Washington, D. C., John R. Dyer, Sp. Atty., Department of Justice, of Webster Springs, W. Va., and Leland Yost, Sp. Atty., Department of Justice, of Washington, D. C., for petitioner.

Jesse Knight, of New York City, R. T. Jackson, of Cleveland, Ohio, and Ernest K. James, of Charleston, W. Va., for respondent, West Virginia Power Co.

Joseph M. Sanders, of Bluefield, W. Va., and Franklin K. Day, Jr., of Bluefield, W. Va., for respondent Norfolk & W. Ry. Co.

McCLINTIC, District Judge.

The history of the question of a power dam in New River, Summers County, West Virginia, at or near the mouth of Bluestone River, was that a predecessor of the respondent, the West Virginia Power Company, along about the year 1914, and for sometime thereafter, had a proposition before it of building a power dam at or near the site asked for in the petition in this case, and purchased, at considerable expense, a number of pieces of land which would have been inundated with water if the proposed dam had been built at that time.

The opposition to the building of this dam in Charleston and in this section of country became very great. It was discussed and opposed both in influential newspapers and by many citizens.

The basis of the opposition was that the dam would be very unsafe and would likely break and let a great volume of water out, which it was alleged would destroy the towns on the New and Kanawha River banks.

The West Virginia Public Service Commission refused to grant any permit for the construction of this dam.

Apparently the construction of this dam was not again brought into active consideration until the condemnation proceeding was brought in this court by the petitioner on the 2nd day of April, 1936.

This petition involved the condemnation of the same properties now asked to be condemned in this case.

Various proceedings were had in reference to such petition. A demurrer thereto was filed and later was argued and submitted.

On the 2nd day of November, 1936, the court announced its ruling on the demurrer, and on the 16th day of November, 1936, an order was made and entered sustaining the demurrer, but with leave to the United States to amend its petition within thirty days.

The petitioner having declined to amend its petition, an order was made and entered on the 12th day of February, 1937, dismissing the petition and granting an appeal to the petitioner to the Circuit Court of Appeals.

Later the case was argued and submitted to the Circuit Court of Appeals, and on the 6th day of August, 1937, a decision was handed down reversing the District Court. United States v. West Virginia Power Company, 4 Cir., 91 F.2d 611.

Then the respondent, West Virginia Power Company, by counsel, presented a petition to the Supreme Court of the United States for a writ of certiorari on the 30th day of October, 1937.

However, before the Supreme Court had acted upon such petition, the petitioner applied to the District Court for an order dismissing the petition and this order, over the protest of the West Virginia Power Company, was entered in the District Court on the 13th day of November, 1937, and that case was then fully ended.

This case now pending was instituted on the 26th day of June, 1939, to condemn the same property which the petition in the former case had prayed to condemn.

The respondents herein, the West Virginia Power Company and the Norfolk & Western Railway Company, appeared specially on the last date and moved to quash the notice issued and served upon them respectively, and further moved to dismiss the petition on the ground that the notice did not comply with the provisions of Chapter Fifty-four, Article Two, Section Three of the Code of West Virginia.

These motions and pleas were argued and the court took time to consider thereof.

On August 4th, 1939, an order was entered overruling the motions to quash and dismiss the action and disallowing the pleas in abatement, but upon the express condition that the petitioner amend its notice so as to conform to the language, in substance, of the petition. This was done in conformity with the ruling of the court.

The respondents desiring to raise the issues of the sufficiency of the petition and the right of the petitioner to condemn the lands in question, were granted until the 1st day of September, 1939, within which time to prepare and tender appropriate motions or pleadings for such purposes.

On the 1st day of September, 1939, an order was entered filing a written motion by the respondents to require petitioner to furnish a better and more particular statement with respect to the numerous allegations in the petition, which motion was set down for argument on the 15th day of September, 1939.

The written motion referred to was then argued, and on the 18th day of September, 1939, an order was entered sustaining the motion and requiring the petitioner to file a bill of particulars and attach same to its petition, setting forth such information from the respective sets of maps, plans and specifications referred to in the written motion as was needed to make clear the nature of the demands of the structure and of the hydraulic features of the project, and such other information therefrom as would, in any respect, indicate the purposes for which the petitioner proposed to condemn the lands in question.

Later, on the 26th day of September, 1939, an order was entered filing a bill of particulars by the petitioner in conformity with the previous ruling of the court, and on the 2nd day of October, 1939, the respondents tendered and filed separate written demurrers to the petition.

On the 6th day of October, 1939, the demurrers were argued and an order entered directing that counsel prepare and exchange briefs not later than the 6th day of November, 1939, and that final briefs be submitted to the court not later than the 21st day of November, 1939.

The arguments were very lengthy and the briefs were very voluminous, and the court took time to consider the questions presented therein.

At the time of the submission of the briefs, the regular fall and winter terms of court came on, and a decision was not reached on the demurrers, and an opinion was not finished, until the 2nd day of April, 1940. This opinion was submitted to the counsel on each side on that date.

The demurrers were in part sustained, and permission was given to the petitioner to amend its petition. The opinion of the court is filed as a part of the record in this case. D.C., 33 F.Supp. 756.

On the 12th day of June, 1940, the petitioner amended its petition at bar in conformity with the opinion of the court in part. After the amendment was made the respondents indicated to the court that they wished to interpose a demurrer to the petition as amended and they were granted time until the 17th day of July, 1940, within which to prepare and tender appropriate motions and pleadings for such purposes. On the 17th day of July, 1940, an order was entered filing the written motions on behalf of the respondents to quash the notice issued and served upon them, and also, a motion to dismiss the proceedings on the ground that there was a substantial discrepancy between the notice and the petition with respect to the purposes for which the lands sought to be taken would be appropriated, and respondents further claimed that the notice did not comply with the provisions of the Code of West Virginia, above referred to.

At the same time, by proper order, separate written demurrers on behalf of the respondents to the petition were filed and the motions and demurrers were set down for argument on the 19th day of September, 1940, with the provision that counsel should prepare and exchange briefs on or before the 5th day of September, 1940, and submit final briefs to the court on or before the date of the argument.

On the 20th day of July, 1940, the petitioner asked leave to amend at bar its notice of application to condemn lands, which leave was granted and the notice was amended by order entered on that date in such manner as to place the notice in harmony with the allegations of the petition with reference to the object and purposes for which the lands sought to be taken would be appropriated. When this was done counsel for the respondents moved that the petitioner be required to republish and serve the notice in the manner provided by the Code of West Virginia on the

ground that the notice had not been served or published since the last two amendments thereof, and that it was necessary, in order for the court to have jurisdiction of the subject matter, that sufficient and lawful notice be given to the respondents, including nonresident respondents, respondents of unknown residencies, and unknown parties named in the petition. This motion was likewise set down for argument on the 19th day of September, 1940.

On the 9th day of October, 1940, an order was made permitting the respondents to withdraw their written motions filed on the 17th day of July, 1940, to quash the notice of application to condemn and dismiss said case, counsel stating as a reason for such withdrawal the fact that such notice had subsequently been further amended with respect to the statement of its purposes.

On that date the court heard the arguments of counsel on the defendants' oral motion of the 20th of July, 1940, that petitioner be required to republish and serve the notice as further amended, and argument was also had on the demurrers theretofore filed. The court took time to consider of its ruling, both on the oral motions and upon the separate written demurrers.

While the court was giving consideration to the voluminous briefs filed herein, the fall and winter terms of the District Court came on and continued through the latter half of November, the whole of December, 1940, and January, 1941, and into the month of February, 1941.

On the 27th day of November, 1940, the local newspapers of Charleston, West Virginia, carried a United Press story, and emanating from Washington, D. C., to the effect that all new flood control projects, even though authorized by Congress, would be held in abeyance until the end of the expenditures for national defense. The article pointed out that under the policy announced, the Bluestone Reservoir Project would be among those held in abeyance for the reason that work on such project had not yet been started.

Some of the questions in this case had been presented to the Supreme Court of the United States in the case of United States v. Appalachian Electric Power Company, pending therein on a certiorari from the Circuit Court of Appeals for the Fourth Circuit. 107 F.2d 769. This court knew that that case had been argued on the 14th day of October, 1940, and was pending

while the matters herein were under consideration.

Naturally, this court waited until the decision by the Supreme Court of the United States in that case was rendered, which decision was handed down on the 16th day of December, 1940. This case will be named herein as the New River case. It is reported in 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243.

Later the court was also informed that a suit had been instituted in a United States District Court of the State of Oklahoma by that state to enjoin the United States from building what is known as the Red River Dam, and this court was further informed that the questions in that action were very similar to some of the questions raised here.

Later a decision was rendered by a three-judge court in the Oklahoma case, D. C., 37 F.Supp. 93, and an appeal was taken from such decision by the State of Oklahoma to the Supreme Court of the United States, and this court was further informed that it would be soon submitted, and it was soon submitted.

The court here thought it best to await the decision in that case, which decision was handed down on the 2nd day of June, 1941. This case was styled: "State of Oklahoma, ex rel. Leon C. Phillips, Governor of the State of Oklahoma, Appellant, v. Guy F. Atkinson Company, Cleon A. Summers, United States Attorney for the Eastern District of Oklahoma, et al., No. 832, Appeal from the District Court of the United States for the Eastern District of Oklahoma." 61 S.Ct. 1050, 85 L.Ed ——.

In the latter part of the month of February, 1941, the Judge of this court was informed that certain negotiations had been entered into between the respondents herein and the Federal Power Commission looking to the settlement and adjustment of all the matters being litigated herein, and it was suggested that this case would likely be ended by such adjustment and there would be no further necessity on the part of this court to pass upon the questions which had been raised herein.

The court was later informed that no adjustments and settlements had been made.

This history is put in here for the reason that there have been some unnecessary and untrue publications as to the reasons why this case has not been earlier decided.

The former opinion herein is sufficiently specific as to all questions in this case up to the amendment of the petition made on the 12th day of June, 1940. The amendment in substance was that the proposed dam and reservoir was to be a power dam as well as a flood control one. The distinction between these two characters of dams is fully set out in the reports of the engineers in this record.

The respondents then demurred to the petition as amended, as follows:

"1. The amended petition fails to show that the Secretary of War, or any other officer of the United States, has been authorized by law to institute or maintain these proceedings in that:

"(a) There is no allegation that any definite agreement has been made for the disposal of the water power to be created by the Bluestone Reservoir Project, in compliance with the proviso in the Report of the Chief of Engineers set forth at page 5 of House Document 91, 74th Congress, 1st Session, which Report is referred to in Paragraph III of the petition as recommending said project, and which proviso constitutes a condition precedent to the existence of any authority in the Federal officers to institute condemnation proceedings to acquire lands for said project under the purported authorization thereof by Executive Order 7183-A, as approved by the Act of Congress of June 28, 1938, 33 U.S.C.A. § 701b et seq., upon which said officers rely as authority for this proceeding.

"(b) The amended petition fails to show that the conditions precedent set forth in Paragraph VI thereof exist or have occurred.

2. "The purposes for which said lands are sought to be condemned and to which said lands are intended to be appropriated, include purposes in excess of any constitutional authority of the United States and in violation of the Ninth and Tenth Amendments to the Constitution and involve the taking of the property of respondent without due process of law in violation of the Fifth Amendment to the Constitution, as severally appears

"(a) from the petition, as amended by said order entered herein on July 12, 1940, and

"(b) from the Executive Order dated September 12, 1935, which the Act of Congress of June 28, 1938, purported to

approve and upon which the amended petition relies as authority to condemn the lands described in the petition, and

"(c) from the Report of the Chief of Engineers, incorporated by reference in said Executive Order upon which Report the amended petition relies in paragraphs III, IV and V thereof."

So far as section two of the demurrer, as above set out, is concerned, this court, on the authority of the New River case and the Oklahoma case, as to what he conceives them to decide, overrules this section of the demurrer and nothing further in reference thereto will be considered in this opinion.

This leaves for consideration and decision the questions raised in section one of the demurrer.

The former opinion sets out so fully the acts of Congress, the letter of the President, the reports of the Engineers and of the Mississippi River Commission, it is deemed unnecessary to repeat any of them here.

The question is: Can the petitioner condemn these lands of respondents without the allegations in the petition that definite agreements and contracts had been made for the sale and disposal of the power to be created by the Bluestone Reservoir Project?

Then has the petitioner any authority to institute these proceedings until the above named conditions are complied with?

In argument, it was admitted that no agreements for the sale of the power to be created had been made.

The language referred to is as follows: "Provided that definite agreement is entered into before construction is begun for the disposal of the power at prices and under conditions that, in the opinion of the Secretary of War, will fully protect the public interest." (House Document 91, 74th Congress, 1st Session, page 5.

However, the argument is made by the petitioner that the condemnation of lands is a necessary preliminary to the beginning of the construction of the dam and the petitioner, after it has the possession of the lands, has the sole power to decide when the construction shall commence, if at all, and that the petitioner has the right, after it is in possession, to use the condemned lands for any lawful purpose.

■ This court does not agree with this argument, but holds that under the Eminent Domain Law of West Virginia the respondents have an absolute right to know in advance of the taking of their lands, each and every use that it is intended by the petitioner to put them to, as well as the absolute authority and right of the petitioner to take them. (See opinion 33 F.Supp. 756).

■ Holding, as the court does, that the condemnation of the lands is the first step in the construction of the power dam and that until the agreements for the disposal of the power to be generated are made, there is no rightful authority in the petitioner to condemn the lands of respondents;

It necessarily follows that the first count of the demurrer must be sustained.

In view of the fact that it is admitted that no such agreements have been made or are in the making, it would seem to be impossible to amend the petition and cure this defect therein.

■ There was submitted to the court, at the same time, by the respondents, a motion that petitioner be required to republish and serve its notice of application to condemn lands, since the notice and petition had each been amended. In view of the holding on clause one of the demurrer, it would seem unnecessary to pass upon this motion. However, without any further discussion, the court holds that respondents, not being affected in any way by the failure of petitioner to again serve and publish the notice, are not the proper condemnees to make the motion, and cannot take any advantage of it being not again done.

Therefore, the motion is overruled.

Let an order be drawn in accordance with this opinion.