**UNITED STATES v. WEST VIRGINIA POWER CO. et al.**

No. 4840.

Circuit Court of Appeals, Fourth Circuit.

Sept. 17, 1941.

Writ of Certiorari Denied Nov. 10, 1941.

See —— U.S. ——, 62 S.Ct. 187, 86 L.Ed. ——.

Charles R. Denny, Jr., of Washington, D. C., Atty., Department of Justice, and Lemuel R. Via, U. S. Atty., of Huntington, W. Va. (Norman M. Littell, Asst. Atty. Gen., and Ralph J. Luttrell, of Washington, D. C., Atty., Department of Justice, on the brief), for appellant.

Raymond T. Jackson, of Cleveland, Ohio (Jesse Knight and J. P. Van de Voort, both of New York City, Ernest K. James, of Charleston, W. Va., and Joseph M. Sanders, of Bluefield, W. Va., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order sustaining demurrers of the West Virginia Power Company and the Norfolk & Western Railway Company and dismissing the petition of the United States for the condemnation of lands for use in the Bluestone Reservoir Project, involving the construction of a dam and reservoir for flood control, river improvement, navigation and electric power purposes. In the course of the proceedings the government moved for an order for the immediate possession of the land sought to be condemned, which was denied by the court.

The petition for condemnation was filed June 26, 1939. On June 12, 1940, the court sustained demurrers thereto on the ground that it did not state with sufficient particularity the uses for which the land was being taken. D.C., 33 F.Supp. 756, 763. The government thereupon amended its petition, and the power company and the railway company filed identical demurrers the first ground of which was as follows:

"1. The amended petition fails to show that the Secretary of War, or any other officer of the United States, has been au-

thorized by law to institute or maintain these proceedings in that:

"(a) There is no allegation that any definite agreement has been made for the disposal of the water power to be created by the Bluestone Reservoir Project, in compliance with the proviso in the Report of the Chief of Engineers set forth at page 5 of House Document 91, 74th Congress, 1st Session, which Report is referred to in Paragraph III of the petition as recommending said project, and which proviso constitutes a condition precedent to the existence of any authority in the federal officers to institute condemnation proceedings to acquire lands for said project under the purported authorization thereof by Executive Order 7183A, as approved by the Act of Congress of June 28, 1938, 52 Stat. 1215, upon which said officers rely as authority for this proceeding.

"(b) The amended petition fails to show that the conditions precedent set forth in Paragraph VI thereof exist or have occurred."

Paragraph VI of the petition merely set forth the declaration of policy contained in section 1 of the Flood Control Act of June 22, 1936, 49 Stat. 1570, 33 U.S.C.A. § 701a, to which more extended reference will be made hereafter.

The court sustained the demurrer on these grounds, overruling a ground going to the constitutionality of the proceedings, and holding that as to the latter ground the decisions in State of Oklahoma v. Guy F. Atkinson Co., 61 S.Ct. 1050, 85 L.Ed. 1487, and United States v. Appalachian Electric Power Co. 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243, were controlling. D.C., 39 F.Supp. 540. As appellees, to sustain the order, rely here upon the constitutional ground decided against them, as well as upon the points decided in their favor, four questions are raised by the appeal: (1) whether the condemnation was unauthorized by law because definite agreement had not been made for sale of power to be created by the Bluestone Project; (2) whether the condemnation was unauthorized by law in view of the provisions of section 1 of the Flood Control Act of 1936; (3) whether, if authorized, the condemnation was within the power of Congress under the Constitution; and (4) whether the government is entitled to an order of immediate possession.

The position of defendants on the first point is that, under sections 202 and 203(a) of the National Industrial Recovery Act, 48 Stat. 201, 202, construction of projects under order of the President was not authorized unless authorized by Congress or recommended by the Chief of Engineers of the Army; that the Bluestone Project had not been authorized by act of Congress and had been recommended by the Chief of Engineers only on condition that definite agreements be made in advance for sale of the power to be generated thereby; and that, since such agreements had not been made, the order of the President authorizing the construction of the project must be held either void or subject to the condition embodied in the recommendation. We should note, at the outset, that no such point was made by the able counsel who represented the West Virginia Power Company in the case in which we held that the Presidential order was valid and that condemnation of lands for the Bluestone Project was authorized under it. United States v. West Virginia Power Co., 4 Cir., 91 F.2d 611. It causes, to say the least, a mild surprise that a point should be so strenuously insisted upon now which was thought of no consequence then. As the point, though not raised, was necessarily involved in the decision of that case, we might content ourselves with citing our decision there as authority, on the principle, not of res adjudicata, but of stare decisis; but, since the court below sustained the point, we feel that we should reexamine it.

The recommendation of the Chief of Engineers is contained in a report to Congress of January 29, 1935 (H.D. 91 p. 4, 5), in which he recommended the construction of the Bluestone Project in the following language:

"The work of greatest immediate general public advantage is the construction of the Bluestone Reservoir, which can be operated to afford a large measure of flood control and water conservation and at the same time yield a substantial return from power production. I therefore recommend the construction by the Federal Government of the Bluestone Reservoir project for the purposes of power development, flood control, and navigation in accordance with the general plans set forth in this report with such modifications as may be approved by the Chief of En-

gineers, at an estimated cost of $13,000,-000, provided that definite agreement is entered into before construction is begun for the disposal of the power at prices and under conditions that in the opinion of the Secretary of War will fully protect the public interest."

On August 14, 1935, the Secretary of War submitted to Congress a comprehensive plan for the control of floods on the Ohio River; and the Bluestone Reservoir, which had been previously recommended, was included as a part of the plan (H.D. 306, 74th Cong., 1st session).

It is clear, we think, that the order of the President did not embody the condition as to disposal of power contained in the recommendation of the Chief of Engineers, by reference or otherwise. That order, dated September 12, 1935, and numbered 7183A, after summarizing the history of the project continues:

"Whereas I find that the construction of the said Bluestone Reservoir Project, in accordance with the plans prepared under the direction of the Chief of Engineers and approved by him and set forth in his said report, will aid in flood control and in the prevention of soil erosion and stream pollution, and will promote navigation, agriculture, sanitation, and power production; and

"Whereas I further find that the sale, in the manner provided by law, of the power produced at the said project will tend to make the project self-liquidating; and

"Whereas the said Bluestone Reservoir Project has been included in the comprehensive program of public works prepared by the Federal Emergency Administrator of Public Works under the direction of the President in accordance with the provisions of section 202 of the National Industrial Recovery Act, approved June 16, 1933 (48 Stat. 201):

"Now, therefore, by virtue of and pursuant to the authority vested in me by the said National Industrial Recovery Act and by the Emergency Relief Appropriation Act of 1935, approved April 8, 1935 (Public Resolution No. 11, 74th Congress), 49 Stat. 115, I hereby order and direct the Secretary of War, through the Chief of Engineers, United States Army, to proceed with the construction of said Bluestone Reservoir Project in accordance with the report of the Chief of Engineers to the Congress and the plans and specifications submitted therewith, subject to such changes in said plans and specifications as shall be approved by the Chief of Engineers; and I hereby allocate from the funds appropriated or made available by the said Emergency Relief Appropriation Act of 1935, the sum of $1,000,000.-00 for the construction of the said Bluestone Reservoir Project in accordance with the provisions of this order. Of the amount above allocated the sum of $800,-000.00 shall be available for the acquisition by purchase, condemnation, or otherwise, of lands necessary for the said project, and the Secretary of War is hereby directed to proceed to acquire and clear, or cause to be acquired and cleared, such lands in anticipation of their use for such project."

It is argued that the order "to proceed with the construction of the Bluestone Reservoir Project in accordance with the report of the Chief of Engineers to the Congress and the plans and specifications submitted therewith" requires that the condition as to sale of power be complied with. We do not think so. The order is to proceed with construction, with nothing said as to making contracts for the sale of power; and the allocation of funds for the purpose and the direction to proceed to acquire lands for the use of the project is inconsistent with any idea that construction was to depend upon the making of contracts disposing of the power to be produced by it. The order treats the recommendation of the Chief of Engineers as a compliance with the provisions of section 202 of the National Industrial Recovery Act and simply ignores the condition contained in the recommendation.

It would seem that, even without further action by Congress, the Presidential order would be valid. The recommendation of the Chief of Engineers, even if conditional, satisfied the language of the excepting clause of the proviso of section 202, which is as follows: "Provided, That no river or harbor improvements shall be carried out unless they shall have heretofore or hereafter been adopted by the Congress or are recommended by the Chief of Engineers of the United States Army". There is nothing in this which requires that conditions imposed by the Chief of Engineers upon his recommendations be observed. We need not decide the point, however, as we are satis-

fied that, in subsequent legislation, the construction of the project was expressly and unconditionally authorized by Congress. United States v. West Virginia Power Co., supra.

The act of June 22, 1936, 49 Stat. 1570, 1572, 1576, gives the unconditional approval of Congress to the project and thus brings it within the quoted language of the proviso of section 202 of the National Industrial Recovery Act as well as approves the executive order directing its construction. If, therefore, the condition imposed by the Chief of Engineers be construed as nullifying his recommendation in the absence of compliance with the condition and the executive order be void for that reason, the act of 1936 supplies the condition of validity, approval by Congress, and validates what has been done. The pertinent provisions of this act are as follows:

"Sec. 5. That pursuant to the policy outlined in sections 1 and 3, the following works of improvement, for the benefit of navigation and the control of destructive flood waters and other purposes, are hereby adopted and authorized to be prosecuted, in order of their emergency as may be designated by the President, under the direction of the Secretary of War and supervision of the Chief of Engineers in accordance with the plans in the respective reports and records hereinafter designated: * * * Reservoir system for the reduction of Ohio River floods below Pittsburgh: Construction of reservoirs *including the completion of the Bluestone Reservoir now under way,* which together with the reservoirs for Pittsburgh flood control, constitutes a comprehensive plan for flood control on the main stream of the Ohio River and on the tributary stream below the reservoirs, as set forth in House Document Numbered 306, Seventy-fourth Congress, first session; estimated construction cost, $19,616,800; estimated cost of lands and damages, $10,519,600." (Italics supplied.)

It is argued that the provisions of this act are superseded by those of the act of June 28, 1938, 52 Stat. 1215; but there is nothing in the provision of the latter act withdrawing the approval of the project thus expressly given.

On the contrary, the latter act is even more specific in approving the executive order. That act provides (52 Stat. 1216, 1217):

"That the following works of improvement for the benefit of navigation and the control of destructive floodwaters and other purposes are hereby adopted and authorized to be prosecuted under the direction of the Secretary of War and supervision of the Chief of Engineers in accordance with the plans in the respective reports hereinafter designated: * * *.

### Ohio River Basin
\* \* \* \* \*

the provisions of Executive Order Numbered 7183A, dated September 12, 1935, are approved, and the acquisition at the cost of the United States of all lands, easements, and rights-of-way needed for the Bluestone Reservoir project are hereby authorized." Section 4.

It is argued that the authorization by Congress of the construction of the project "in accordance with the plans in the respective reports" in the acts of 1936 and 1938 amounts to an adoption of the condition as to the disposal of power. A sufficient answer to this contention would seem to be that the Chief of Engineers recommends the construction of the project "in accordance with the general plans set forth in this report" before stating the condition relating to the disposal of power, thus showing that this condition was not considered a part of the plans, which it obviously was not.

It follows that the court below was in error in holding that the petition for condemnation was defective because it failed to allege that definite agreements had been made for the sale of power to be created by the project.

The second point, that the conditions set forth in paragraph VI of the petition have not been complied with, is equally without merit. As heretofore stated, that paragraph merely set forth the declaration of policy contained in section 1 of the act of June 22, 1936, 49 Stat. 1570, 33 U.S.C.A. § 701a. The part thus copied in the petition is as follows:

"It is hereby recognized that destructive floods upon the rivers of the United States, upsetting orderly processes and causing loss of life and property, including the erosion of lands, and impairing and obstructing navigation, highways, railroads, and other channels of commerce between the States, constitute a menace to national welfare; that it is the sense of Congress that flood control on navigable waters or

738

their tributaries is a proper activity of the Federal Government in cooperation with States, their political subdivisions, and localities thereof; that investigations and improvements of rivers and other waterways, including watersheds thereof, for flood-control purposes are in the interest of the general welfare; that the Federal Government should improve or participate in the improvement of navigable waters or their tributaries, including watersheds thereof, for flood-control purposes if the benefits to whomsoever they may accrue are in excess of the estimated costs, and if the· lives and social security of people are otherwise adversely affected."

It is clear that this declaration of policy does not constitute a limitation upon the specific authorization contained in that portion of section 5 of the act heretofore quoted. On the contrary, section 5 begins with the statement that the following works of improvement adopted and authorized are in accord with the policy outlined in sections 1 and 3. So far as the policy of state cooperation mentioned in section 1 is concerned, this was specifically covered by section 3, which provided that no money appropriated by that act should be expended for the construction of any project until the states or their political subdivisions had given satisfactory assurances that they would (a) provide the necessary easements without cost to the United States, (b) save the United States free from damages due to the construction of the works, and (c) maintain and operate the works after completion. There was a proviso to section 3, however, "that nothing herein shall be construed to interfere with the completion of any reservoir or flood control work authorized by the Congress *and now under way*". (Italics supplied.) As the Bluestone Reservoir was described in section 5 of the act as "now under way", it was expressly excepted by the proviso quoted from the conditions imposed by section 3. So far as the benefit exceeding the cost is concerned, this was a matter of legislative policy (State of Oklahoma v. Guy F. Atkinson Co., supra), and it has been determined by Congress in the express authorization of the project both in this act and the act of June 28, 1938, 52 Stat. 1215, 1217.

■ On the third point, the question of constitutionality, little need be said. The project is undoubtedly one of the most important flood control projects in the country. It was recommended by the Army Engineers and authorized by the Congress as part of a nation-wide plan of flood control. It has relation not merely to the New River and the Kanawha, but to the larger problem of flood control in the Ohio and Mississippi Rivers. The fact that production of power is combined with flood control in the project does not condemn it; for it is for Congress to say what type of project will best serve the constitutional purpose it is pursuing and to what extent flood control should be sacrificed to power production so as to make the project economically feasible. The entire argument of the power company here was answered by the Supreme Court in the recent case of State of Oklahoma v. Guy F. Atkinson Co., supra [61 S.Ct. 1061, 85 L.Ed. 1502], where the Court, speaking through Mr. Justice Douglas, said:

"But Oklahoma points out that the Denison Reservoir is a multiple purpose project, combining functionally and physically separate and unrelated purposes. It says that only the top 40 feet of the dam is set apart for flood control and that the lower portions of the dam are designed for the power project and are neither useful or necessary for flood control. It points out from the Report that a reservoir for flood control only would have a maximum height of 165 feet while a reservoir for flood control and power development would require a maximum height of 185 feet. It therefore earnestly contends that the additional 20 feet in height of the dam requires a very much greater acreage of appellant's domain than would a project for flood control only. And it insists that Congress is without authority to authorize a taking of Oklahoma's domain for the construction of the water power feature of the project.

"There are several answers to these contentions. We are not concerned here with the question as to the authority of the federal government to establish on a non-navigable stream a power project which has no relation to, or is not a part of, a flood control project. While this reservoir is a multiple purpose project, it is basically one for flood control. There is no indication that but for flood control it would have been projected. It originated as part of a comprehensive program for flood control. And the recommenda-

tion in the Report that a dual purpose dam be constructed was based 'on the assumption that the flood-control project is to be built in any event.' * * *

"It is true that the power phase of this project in purpose and effect will carry some of the costs of flood control. The Division Engineer estimated that the annual deficit of $287,000 from flood control would be offset by an annual profit of $404,310 from power, leaving an annual net profit of $117,000. But the 'fact that Congress has introduced power development into this project as a paying partner does not derogate from the authority of Congress to construct the dam for flood control, including river flow. The power project is not unrelated to those purposes. The allocations of cost and storage between power and flood control, however significant for some purposes, cannot conceal the flood control realities of this total project. * * *

"Whether the work of flood-control, including river flow, would be better done by a dam of one design or another is for Congress to determine. And, as we have said, the fact that ends other than flood control will also be served, or that flood control may be relatively of lesser importance does not invalidate the exercise of the authority conferred on Congress. Kaukauna Water-Power Co. v. Green Bay & Mississippi Canal Co. 142 U.S. 254, 275, 276, 12 S.Ct. 173, 178, 35 L.Ed. 1004; see In re Kollock, 165 U.S. 526, 536, 17 S.Ct. 444, 447, 41 L.Ed. 813; Weber v. Freed, 239 U.S. 325, 329, 330, 36 S.Ct. 131, 132, 60 L.Ed. 308, Ann.Cas.1916C, 317; Arizona v. California, supra, 283 U.S. [423], page 456, 51 S.Ct. [522], page 526, 75 L. Ed. 1154."

See, also United States v. Appalachian Power Co., 311 U.S. 377, 426, 61 S.Ct. 291, 85 L.Ed. 243, and Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688.

On the fourth point, it is reasonable to assume that the District Judge's denial of the order of immediate possession was based upon his opinion that the condemnation proceeding was not authorized, and that such an order will now be promptly entered upon his being satisfied that certain and adequate provision has been made for the payment of just compensation. United States v. Meyer, 7 Cir., 113 F.2d 387, 392, 393, certiorari denied, 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. ——.

A letter from the Secretary of War to the Attorney General under date of September 8, 1941, copy of which has been filed with this court, advises that funds with which to pay the awards for lands involved in this project are still available from appropriations made by War Department Civil Appropriations Acts of June 11, 1938, 52 Stat. 667, June 28, 1939, 53 Stat. 856, and May 23, 1941, 55 Stat. 190. If it be thought, as to which we indicate no opinion, that the provision for payment so made is not sufficiently "certain and adequate", in view of the fact that the funds appropriated might be used for other purposes pending the litigation, the United States would nevertheless be entitled to the order, conditioned, however, if that view be taken, upon the deposit of funds, in a reasonable amount to be approved by the judge, to pay for the lands involved. Act of July 18, 1919, c. 155, § 5, 40 Stat. 904, 911, 33 U.S.C.A. § 594.

The order sustaining the demurrer and dismissing the petition will accordingly be reversed and the cause will be remanded to the court below with direction that, in the light of the principles here announced, it pass upon the motion for an order that the United States have immediate possession of the land sought to be condemned, and for further proceedings not inconsistent with this opinion. Without intimating that blame attaches to anyone for the delay that has heretofore occurred in the proceeding, we think that the construction of this project, which has been approved both by the legislative and the executive branches of the government, should not be further delayed, except to the extent necessary to afford the parties a full and fair hearing. Mandate will accordingly issue twenty days from date unless the appellees shall in the meantime have filed with the Supreme Court a petition for writ of certiorari to review our decision, in which event it will be stayed pending action by that court.

Reversed and remanded with directions.