# ISBRANDTSEN-MOLLER CO., INC. *v.* UNITED STATES ET AL.

No. 307.   Argued January 15, 1937.—Decided February 1, 1937.

*Mr. James W. Ryan* for appellant.

*Assistant Attorney General Dickinson,* with whom *Solicitor General Reed* and *Messrs. Hugh B. Cox, Edward Dumbauld,* and *R. H. Hallett* were on the brief, for the United States et al., appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This is an appeal from the final decree of a specially constituted district court of three judges for the Southern District of New York denying an interlocutory injunction and dismissing the appellant's bill for failure to state facts sufficient to constitute a cause of action.[1] The suit was brought to restrain enforcement of an order issued November 18, 1935, by the Secretary of Commerce pursuant to § 21 of the Shipping Act, 1916,[2]

---

[1] 14 F. Supp. 407.

[2] Act of Sept. 7, 1916, c. 451, § 21, 39 Stat. 728, 736, 46 U. S. C. § 820. The suit was instituted under § 31 of the Shipping Act, 39 Stat. 738, 46 U. S. C. § 830, whereby the venue and procedure in suits to restrain enforcement of an order of the Shipping Board are made the same as in similar suits respecting orders of the Interstate Commerce Commission. (Judicial Code, § 208, 28 U. S. C. 46, and the Act of October 22, 1913, c. 32, 38 Stat. 219, 28 U. S. C. §§ 43, 44, 45, and 47, whereby the venue of a suit brought to set aside an order

requiring the appellant to file with the Secretary on December 16, 1935, a copy or summary of its books and records for the period September 1 to November 12, 1935, which should show each commodity carried from the United States to a foreign country, with point of shipment, point of destination, and rate charged or collected, the effective date of the rate, and trans-shipment and terminal charges and rules affecting rates or value of the service rendered. The order recites that it appears full information as to rates in connection with transportation of certain property from the United States to foreign countries by carriers by water in foreign commerce subject to the Shipping Act 1916 is necessary to the proper administration of the regulatory provisions of the act and that the appellant is engaged in such transportation.

The complaint sets forth five causes of action. The first is that the order is invalid because Congress did not intend by the Legislative Appropriation Act of 1932 [3] to authorize the President to abolish the Shipping Board and transfer its functions to an executive officer such as the Secretary of Commerce, and that if Congress did so intend the Act is unconstitutional as attempting to make the head of an executive department also a judicial officer

---

of the Interstate Commerce Commission is the judicial district in which the petitioner has its principal office.) The complainant named and attempted to serve as defendants, in addition to the United States, the Department of Commerce, the Shipping Board Bureau of the Department of Commerce, Daniel C. Roper, individually and as Secretary of Commerce, James C. Peacock, individually and as Director of the Shipping Board Bureau, and Lamar Hardy, United States Attorney for the Southern District of New York. The suit was dismissed as to many of these defendants for want of service or for want of proper joinder as defendants but the action was maintainable as the United States is, by the statutes, made the proper party defendant in such cases. No point is here made as to the action below dismissing defendants from the cause.

[3] Act of June 30, 1932, c. 314, 47 Stat. 382, 413.

and a legislative officer of the United States and in failing to set up an adequate declaration of policy or standard of action, and, further, that the President promulgated the order of transfer without adequate hearings or findings of fact on which to base it.

The second cause of action is that the Secretary's order is invalid as in substance the attempt of a competitor to regulate or stabilize the appellant's rates and to compel it to charge rates fixed by a shipping monopoly of which appellant's competitor is a member. The charge is that before the order was issued the Secretary had transferred all his Shipping Board functions to one Peacock, who was president of a private shipping corporation (The United States Merchant Fleet Corporation) which was actively operating vessels in competition with those of appellant and was a member of a conference or shipping combination whose interests were opposed to those of appellant, which is an independent or non-conference operator; and that the order had been issued for the financial benefit of the competitor. The further allegation is that the constitutional separation of powers between legislative, judicial, and executive branches and the Fifth Amendment of the Constitution forbid the exercise of regulatory or quasi-judicial functions such as were entrusted to the United States Shipping Board, by persons or agencies having the interests described, and require that the Secretary's order be held for naught.

The third cause of action is that the order was issued not for a public purpose authorized by Congress but in furtherance of a concerted plan to compel the appellant, an independent non-conference carrier, either to join a conference or shipping monopoly, or else suffer damage by disclosure to competitors of current business records showing rates charged and commodities transported. The Secretary's order is alleged to have been issued to promote and foster a monopoly of appellant's competitors.

The fourth cause of action is that the order is an unjust discrimination against appellant which is forbidden by the Fifth Amendment because it requires appellant to file a record of actual transactions, whereas the Secretary requires appellant's competitors, the conference lines or members of the shipping combination, merely to file general rate schedules for the future which are not always observed and need not be observed. Further, that the order issued under § 21 entails penalties for disobedience whereas orders issued by the Secretary to appellant's competitors were not issued under § 21 or any other section of the act, carried no penalties for non-observance, and called only for information which those competitors were already required by law to file under § 15 of the Shipping Act of 1916 [4] because of their having joined in a conference or shipping combination.

The fifth cause of action is that the order should be enjoined because the Secretary rejected appellant's offer to file records on condition that they would not be communicated to appellant's competitors to the damage of appellant and because the Secretary stated his purpose was to turn the records over to the public, which would result in fostering unfair competition and ruin appellant's business. It is charged that the appellant cannot comply with the order without prejudice or losing its equitable, legal, and constitutional rights.

An injunction affidavit was filed by the appellant and two reply affidavits by the United States. We find it unnecessary to consider them as we are of opinion that the decree dismissing the bill must be affirmed.

The grounds of complaint fall into two general classes. Upon the assumption that the powers and duties of the Shipping Board were effectively transferred to the Secre-

---

[4] Act of September 7, 1916, § 15, c. 451, 39 Stat. 728, 733, 46 U. S. C. § 814.

tary of Commerce, the claim is that the order was beyond the statutory authority conferred by the Shipping Act, amounted to an illegal search and seizure, and was invalid because arbitrary and unreasonable. But, in addition, it is asserted that transfer of the board's powers and duties to the Secretary was unauthorized by action of Congress and, if so authorized, was in violation of the Constitution.

*First.* The order is plainly within the terms of § 21 of the Shipping Act, 1916, which provides:

"The board may require any common carrier by water, or other person subject to this chapter, or any officer, receiver, trustee, lessee, agent, or employee thereof, to file with it any periodical or special report, or any account, record, rate, or charge, or any memorandum of any facts and transactions appertaining to the business of such carrier or other person subject to this chapter. Such report, account, record, rate, charge, or memorandum shall be under oath whenever the board so requires, and shall be furnished in the form and within the time prescribed by the board. Whoever fails to file any report, account, record, rate, charge, or memorandum as required by this section shall forfeit to the United States the sum of $100 for each day of such default."

The appellant suggests that the section grants power merely to subpoena records, reports, and information, to be exercised only in hearings upon complaints of violation of the act. This view ignores the fact that § 27 explicitly authorizes the issuance of subpoenas,[5] including subpoenas *duces tecum,* for hearings upon alleged violations. It is inconceivable that this is mere tautology. The purpose of § 21 is not far to seek. Other sections forbid allowance of rebates, require the filing of agreements fixing or regulating rates, granting special rates, accommodations or privileges, which may be disapproved,

---

[5] 46 U. S. C. 826.

cancelled or modified if the board finds them unjustly discriminatory or violative of the act, prohibit undue or unreasonable preferences or the cutting of established rates and unjust discrimination between shippers or ports.[6] To enable it to perform its functions the board may well need such information as that which the section gives it power to demand. Indeed the order recites that in this instance such information is so required.

Despite its recitals of legitimate purpose, the order, so the complaint alleges, sprang from illegal motives, namely, to regulate and stabilize freight rates for the benefit of carriers belonging to steamship conferences, to compel appellant to join a conference, and to create a monopoly in trans-oceanic shipping.

Aside from the principle that if the order is justified by a lawful purpose, it is not rendered illegal by some other motive in the mind of the officer issuing it,[7] the allegations of the complaint are mere conclusions unsupported by any facts pleaded and are, therefore, insufficient.[8]

The argument that the order amounts to an unreasonable search and seizure forbidden by the Fourth Amendment, is answered by the fact that it does not call for the production or inspection of any of appellant's books or papers.[9]

---

[6] 46 U. S. C. 812–816.

[7] *Dakota Central Telephone Co.* v. *South Dakota,* 250 U. S. 163, 184. *Philadelphia & Trenton R. Co.* v. *Stimpson,* 14 Pet. 448, 458, 459; *United States* v. *Chemical Foundation,* 272 U. S. 1, 14, 15.

[8] *Moore* v. *Greene,* 19 How. 69, 72; *St. Louis & San Francisco Ry. Co.* v. *Johnston,* 133 U. S. 566, 577; *Garrett* v. *Louisville & N. R. Co.,* 235 U. S. 308, 313; *Nortz* v. *United States,* 294 U. S. 317, 324–5; *Einstein* v. *Schnebly,* 89 Fed. 540, 548.

[9] *Interstate Commerce Comm'n* v. *Baird,* 194 U. S. 25, 45, 46. Compare *Olmstead* v. *United States,* 277 U. S. 438, 463; *Baltimore & Ohio R. Co.* v. *Interstate Commerce Comm'n,* 221 U. S. 612.

The complaint asserts the appellant is the only carrier which has been required, pursuant to § 21, to file a record of rates actually charged. The section, however, plainly authorizes the making of such an order directed to a single carrier. Nevertheless, the appellant charges such action is unreasonable and arbitrary and violates the Fifth Amendment. The bill itself discloses the conference carriers have filed schedules of their rates and the act requires that if any contract for a change of those rates is made the new rates may be charged only after the board has approved the agreement.[10] The gravamen of the complaint does not appear to be that the appellant is required to supply information not furnished by the conference lines, or different information from that which the conference lines file with the Secretary, but that the conference lines are not compelled to adhere to the rates named in their schedules. There is, however, no showing that this circumstance injures the appellant. The data called for related to rates charged in the past,—rates fixed by the appellant without constraint; and the bill makes no charge that compliance with the order will in any wise restrict the appellant's freedom to deviate from those past rates in the future. The case made by the bill fails to exhibit discrimination in fact as between appellant and its competitors, much less arbitrary and unjustifiable discrimination.

*Second.* It is earnestly contended that Title IV of the legislative appropriation act of June 30, 1932, as amended,[11] did not authorize the abolition of the Shipping Board and the transfer of its functions to the Department of Commerce by executive order. Title III of the act reorganized the Shipping Board; and it is said that Congress would not have taken this action had it

[10] 46 U. S. C. 814.

[11] 47 Stat. 413; 47 Stat. 1517.

intended to include the Shipping Board within the scope of § 402 of the act, which defines executive agencies the President may abolish or whose functions he may transfer as "any commission, board, bureau, division, service, or office in the executive branch of the government." That this is true is attested by the fact that § 406 withheld from the President the authority to abolish or transfer the functions of the Shipping Board. But when the act was amended March 3, 1933,[12] the prohibition was omitted and the phrase "independent establishment" was added to the enumeration of executive agencies in § 402. After these changes were made the President, by Executive Order dated June 10, 1933, made the transfer. As required by the act of June 30, 1932, he transmitted a copy of the order to the Congress, which adjourned a few days after its receipt. Whatever doubt may be entertained as to the intent of Congress that the Shipping Board should be subject to transfer by the President, and, if so, whether the order lay before Congress the requisite number of days to satisfy the statutory mandate, Congress appears to have recognized the validity of the transfer and ratified the President's action by the appropriation acts of April 7, 1934,[13] March 22, 1935,[14] and May 15, 1936,[15] all of which make appropriations to the Department of Commerce for salaries and expenses to carry out the provisions of the shipping act as amended and refer to the executive order. The appellant insists that these references were casual and are not to be taken as ratifying the President's action. We need not stop to consider the argument since, by the Mer-

[12] 47 Stat. 1517.
[13] C. 104, Title III, 48 Stat. 529, 566.
[14] C. 39, Title III, 49 Stat. 67, 99.
[15] C. 405, 49 Stat. 1309, 1345.

chant Marine Act of 1936,[16] § 204 (a), the functions of the former Shipping Board are referred to as "now vested in the Department of Commerce pursuant to § 12 of the President's Executive Order No. 6166."

It remains to deal with the contentions that Congress lacked the power either to transfer or to ratify the transfer of the duties of the Shipping Board to the Secretary of Commerce by delegating to the President authority so to do by executive order, subject to the approval of Congress, and that the President, in exercising the power delegated to him, exceeded his authority because he acted without notice and hearing and failed in the order adequately to specify the grounds for his action. We find it unnecessary to decide the questions sought to be raised in this connection. On June 29, 1936, Congress adopted the Merchant Marine Act. By § 204 (a) of that statute it was provided:

"All the functions, powers, and duties vested in the former United States Shipping Board by the Shipping Act, 1916, . . . and amendments, . . . and now vested in the Department of Commerce pursuant to Section 12 of the President's Executive Order of June 10, 1933, are hereby transferred to the United States Maritime Commission . . ."

The Commission is created by the Act. By § 204 (b) it is authorized to adopt all necessary rules and regulations to carry out the powers, duties, and functions vested in it by the act. October 21, 1936, after organization, the Commission promulgated an order (General Order No. 2) [17] in which it declared:

". . . all orders, . . . which have been issued or authorized by . . . the Department of Commerce, in the exercise of the functions, powers, and duties transferred

---

[16] June 29, 1936, c. 858, 49 Stat. 1985.

[17] The Federal Register, No. 159, October 23, 1936, p. 1917.

to this Commission by the Merchant Marine Act, 1936, and which are in effect at the time of such transfer, shall continue in effect, insofar as not in conflict with said Act, until modified, terminated, superseded, or repealed by this Commission or by operation of law; . . ."

We are of opinion that the Act of 1936 and the Commission's order render moot the constitutional questions sought to be raised by the appellant even though we assume, without deciding, that the Secretary of Commerce had no power to issue the order of November 18, 1935. That order was administrative in character. It determined no rights and prescribed no duties of the appellant as an ocean carrier. It demanded the filing of data. No notice or hearing was prerequisite to its issue. It was still *in fieri* when the United States Maritime Commission came into existence. By virtue of the action of that commission it is continued in force and the appellant is commanded to obey it. The appellant concedes that if the order was within the constitutional and statutory powers of the Shipping Board, and had been made by that board, there could be no question of its validity. As it has become an outstanding administrative order of a commission having the powers and duties formerly vested in the Shipping Board the appellant is in no position to contend that, as it now affects the appellant, the order is void because issued in the alleged unconstitutional exercise of the powers of the Shipping Board by the Secretary of Commerce.

The decree is

*Affirmed.*