## DARBY v. UNITED STATES.
### No. 10326.

Circuit Court of Appeals, Fifth Circuit.
Jan. 15, 1943.

Robert M. Hitch, Jr., and Shelby Myrick, both of Savannah, Ga., for appellant.

Geo. A. Downing, Regional Atty., U. S. Dept. of Labor, of Atlanta, Ga., and J. Saxton Daniel, U. S. Atty., and Julian Hartridge, Asst. U. S. Atty., both of Savannah, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Fred W. Darby was indicted in nineteen counts for violations of the Fair Labor Standards Act, 29 U.S.C.A. § 201, et seq. The Supreme Court reversed a judgment sustaining a demurrer, and upheld the constitutionality of the Act. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L. Ed. 609, 132 A.L.R. 1430. On a trial Darby was acquitted on eight counts and convicted and sentenced on eleven. He appeals, specifying as error the overruling of his motion for a directed verdict of acquittal, the admission of oral evidence as to his work records, the refusal to rule out evidence of an arrangement with his employees made before the Act became effective, and the refusal to give two written requests to charge the jury.

The motion for directed verdict was general, referring to no particular counts, and went on the insufficiency of the evidence to prove that the violations of the Act were wilful, only wilful violations being punishable under Sect. 16(a). Darby testified that he intended to observe the Act, and if he had not it was due to mistake as to what the law required and in figuring wages by his clerical employees. But there were circumstances which tended to show otherwise, and especially that he made a plan to circumvent the Act before it went into effect, and suggested a similar plan to an employer of labor who logged his sawmill. Darby's real purposes fairly made a question for the jury, and the question was properly submitted to them.

The witnesses for the prosecution had inspected Darby's work records, required to be kept and made subject to inspection by Section 11(c) of the Act and a regulation of the Administrator published in the Federal Register of Oct. 22, 1938; and had made transcripts of the parts relating to certain employees mentioned in several of the counts. The original records were in defendant's hands at the time of the trial, and it seems to have been assumed that he could not be made to produce them. No objection was made to the introduction of the transcripts, they being treated as the best evidence available, but when the witnesses testified more generally as to what the records showed and did not show, it was objected that transcripts of all should have been made, and that oral evidence was inadmissible. We do not enquire whether these records, required by law to be made for the information of public officers, might not be ordered brought into court;* but assuming them covered by the Fourth Amendment as papers of the defendant, so that they as the original evidence were inaccessible, the "best evidence" rule was not violated. Where there were proven copies, the copies were better evidence than the recollection of witnesses; but where there were no copies, such recollection was the best available evidence. 20 Am.Jur., Evidence § 404. So much of the testimony as related to what records were not kept was admissible, even though the records kept had been accessible. No error appears in the reception of the oral testimony objected to.

---

* It is certainly not clear that an unreasonable search would be made by requiring the production of records which for public purposes the law requires to be kept. Compare McMann v. Securities and Exchange Commission, 7 Cir., 87 F. 2d 377, 109 A.L.R. 1445; United States v. Mason, 26 Fed.Cas. page 1189, No. 15,- 735; United States v. Three Tons Coal, 28 Fed.Cas. page 149, No. 16,515; Baltimore & O. R. Co. v. Interstate Commerce Commission, 221 U.S. 612, 31 S. Ct. 621, 55 L.Ed. 878; Isbrandtsen-Moller Co., Inc., v. United States, 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562.

██ The arrangement made with employees six weeks before the Act went into effect was that for those six weeks they would work for 8½ cents per hour instead of the customary 17 cents, but would be paid 8½ cents in addition as a loan to enable them to live; and after the effective date of the Act the loan would be gradually liquidated out of the 25 cents per hour then earned. The employees were paid 17 cents per hour till the effective date, and were paid less than 25 cents afterwards because of deductions to repay this loan. Darby testified that he did this in good faith because he could not take contracts offered and pay wages under the Act, and it was presented to the employees as a bona fide alternative to shutting down the mill. The employees who testified did not regard it as a real wage cut and loan. The same plan was testified to have been proposed by Darby to his logger as a way around the Act. The evidence was properly retained in the case, not to show a violation of the Act before it was effective, but as a possible light on the wilfulness of Darby's failures to conform after the Act was effective. The jury were properly instructed that if there was a bona fide cut and loan and repayment of the loan, nothing unlawful was thereby done, but if it was a mere scheme to evade in part the wage provisions of the Act, they might consider it as tending to show wilful violation.

██ Darby requested the court to charge the jury that the word "wilful" in the statute means "with a bad purpose, and without justifiable excuse. Before a person's conduct can be classified as wilful there must be an evil motive as a constituent element of the crime." The court thought "evil motive" too strong an expression, and charged: "If the employer purposely and deliberately evades the Act and fails to do what he knows he ought to do under the Act, this is wilful—purposely failing to comply with the requirements of the Act. Now of course if there are circumstances which would relieve an employer of the imputation that he deliberately and purposely failed to do what the law required; that he had some reasonable basis for failing to comply, or some reasonable ground to think he was not required to do certain things and did not do them because he did not know he was supposed to do them, he could not be convicted for failure to do them." We think the instruction given was adequate and accurate. The acquit-

tal on several counts followed, as to which Darby maintained he thought what he did was in accord with the law. The meaning of wilful in punitive statutes is discussed in United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; Hargrove v. United States, 5 Cir., 67 F.2d 820, 90 A.L.R. 1276.

Another requested charge was to the effect that the arrangement with the employees before the Act went into effect could be used only to determine whether the defendant's actions afterwards were wilful. The judge charged lengthily about the matter, telling the jury that before the Act employer and employees could make any agreements they chose to work for any amount they might agree on; but if it was a scheme intended and having the actual effect of violating the Act after it became effective, by in substance causing the employees to work for less than 25 cents per hour, it would be evasion of the Act and not compliance with it. The instruction given was correct. If there was no bona fide cut in wages and bona fide loan of money, but these were only pretended, the withholding of wages under the Act to pay the pretended loan would violate the Act, and the very planning of it in advance would tend to show wilfulness.

Judgment affirmed.