**FLEMING, Administrator, Office of Temporary Controls, O.P.A., v. TAYLOR et al.**

Civil Action No. 2303.

District Court, N. D. Texas, Dallas Division.

Feb. 21, 1947.

W. R. Herring, of Dallas, Tex., and T. B. Coffield, of Bowie, Tex., both for plaintiff.

Clark, Coon, Holt & Fisher, of Dallas, Tex., for defendants.

ATWELL, District Judge.

On November 4, 1946, this suit was instituted for $71,404.74, the amount of treble damages on the allegation that the defendants had violated Maximum Price Regulation No. 215, and Revised Maximum Price Regulation No. 19, as amended, in the sale of yellow pine lumber. A day or two after that the President decontrolled lumber and abandoned the mentioned Regulations. On December 12, 1946, by Executive Order, he abandoned the Office of Price Administration and consolidated it in a new office, called the Office of Temporary Controls, and Temporary Controls Administrator. Executive Order No. 9809. This Order attempted to carry forward the functions of the Director of the War Mobilization and Reconstruction, the Economic Stabilization Director, the Price Administrator, and the Civilian Production Administrator, including such functions of President as are administered by said officers. The word, "functions," to include the authority to maintain in his own name civil proceedings relating to matters theretofore under the jurisdiction of the Price Administration, including such proceedings as were pending.

On December 20, 1946, leave was asked of this court, and granted, to substitute the present plaintiff, as Administrator of the Office of Temporary Controls, and of the Office of Price Administration.

The defendants claim that the President had no authority to create the Office of Temporary Controls, and that the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., does not confer jurisdiction to prosecute suits for damages, or penalties, upon an officer to be named by the President without the consent of Congress, but that such naming must be with the advice and consent of the Senate. Like the Emergency Price Control Act, it merely authorized the President to transfer powers and functions conferred by that Act to another department, or agency, only when the same, have "other functions re-lating to such commodity." That he was not authorized to create a new Board, or an Administrator of his own choice, and delegate to such officer the authority restricted by the Emergency Price Control Act to the Administrator of the Office of Price Administration. Further, that such Executive Order No. 9809 attempts to legislate. Emergency Price Control Act 1942, as amended 1944, Sec. 1(a), (b), (c); Sec. 201, subds. (a), (b); Sec. 205, subsection (e).

The Reorganization Act of 1945, 5 U.S.C.A. § 133y et seq., would seem to control the power vested in the President under the First War Powers Act of 1941, 50 U.S.C.A.Appendix, § 601 et seq., the Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 631 et seq., the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 961 et seq., and the Emergency Price Control Act. Sec. 2(a) provides what the President shall do. Sec. 3 requires certain findings and the presentment of a plan. This plan, subdivision (5) of Sec. 3, is to be transmitted to Congress. Under Sec. 5 subd. (a)(1), such plan shall not establish "any new executive department," nor change the name of any executive department, nor the title of its head. Sec. 5(a)(2). The Reorganization Act, provides that no reorganization * * * shall have the effect of establishing any new Executive Department, or changing the name of any Executive Department, or the title of its head. (Report legislative history of the Reorganization Act, 979 House.)

Said history also contains the statement that, "the Bill expressly prohibits the establishment of any new Executive Department, the abolition, or transfer of an Executive Department, or, of all its functions, the changing of the name of an Executive Department, or, the title of its head, or, the designation of any agency as Department, or, its head as secretary."

The plaintiff calls attention to the fact that the Re-organization Order was submitted to Congress as required and that Congress acted upon the request and allowed the re-organization to go forward. It must be remembered, however, that the forward signal was accompanied by certain

provisions, namely those just above quoted.

The issue, therefore, seems to be rather clear-cut; namely, has the President exceeded the powers conferred upon him by the transfer and re-naming of a personnel of the Act under which this suit is brought?

■■ The defendants call attention to such cases as Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; Blalack v. United States, 6 Cir., 154 F.2d 591; Porter v. Hirahara, and Porter v. Koike, D.C.1947, 69 F.Supp. 441, Hawaii court, and Porter v. Wilson, 69 F.Supp. 447 holding as this court now holds; while the plaintiff bears down upon the construction given the First War Powers Act by the Executive Department as well as by Congress through appropriations; but the court is not permitted to construe when the language is not ambiguous. He also cites Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; Surgett v. Lapice, 8 How. 48, 49 U.S. 48, 12 L.Ed. 982; Isbrandtsen-Moller Co. v. United States, 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562; Tyne Co. v. National Labor Relations Board, 7 Cir., 125 F.2d 832; Brooks v. Dewar, 313 U.S. 354, 61 S.Ct. 979, 85 L.Ed. 1399; California Lima Bean Growers' Ass'n v. Bowles, Em.App., 150 F.2d 964; Village Apartment House, Inc. v. Bowles, Em. App., 149 F.2d 649; Shrier v. United States, 6 Cir., 149 F.2d 606. Lastly, the plaintiff contends that the courts have been permitting the substitution of Fleming for Porter. This last argument is without very much force because the making of parties, and the liberality of amendment is always subject to further examination by the parties and the court.

In Sec. 92(b), Title 50 U.S.C.A.Appendix will be found the authority that the Congress, in the Emergency Price Control Act, gave the President authority to transfer powers and functions of the Price Administrator to, and only to, "other government department or agency * * * having other functions relating to such commodity."

In Porter v. Ryan, D.C.1947, 69 F.Supp. 446, by Judge McCulloch, practically the same position was taken. He said: "The President is authorized to transfer any of the powers and functions conferred by this Act upon the Office of Price Administration with respect to a particular commodity, or commodities to any other department or agency of the Government having other functions relating to such commodity or commodities. * * * Sec. 201(b)." It must be continually kept in mind that lumber had been entirely decontrolled before this attempted change was made.

■ Therefore, there was no authority legally transferred either by the Consolidation Act, or by other Act, for this plaintiff to bring this suit, or to maintain it. This pretermits the reference to the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the statute permitting the substitution of parties. The Temporary Controls Administrator may not be substituted for the Price Administrator as a party plaintiff in a decontrolled lumber suit. One of the reasons for that statement is that the authority simply does not exist. Another reason is that the Senate did not confirm the successor of the Price Administrator so attempted to be created as to this particular commodity.

■■ In Porter v. Goodwin, D.C., 1946, 68 F.Supp. 949, the court refused to permit a substitution of plaintiffs upon the performance of conditions shown in 28 U.S.C. A. § 780. The rule contemplates that the mere filing of a motion for substitution within that period is sufficient compliance. It means that the need must be satisfactorily shown. The word, "need," would include thought with reference to a freed article and to congressional requirement. Rule 25(d) can only be satisfied by a successor in office. There is no successor to the Price Administrator for the commodity decontrolled. Nor by transfer of pending right to litigate to one having such power by reason of being continued in that same duty, nor by one not properly confirmed as the original Administrator under the Act must be confirmed, before he has any authority.

The critical eye is going to have considerable difficulty in squaring the legal bases upon which the plaintiff enters court with the Congressional requirements that

were made for the Consolidation Act. The habit of slurring our reasoning, and clouding our logic, with apologetic argument based on further appropriation, or apparent acquiescence by the courts, to whom, it may be, the point was not acutely presented, or considered, is not a habit to be encouraged in a government of written laws and fundamental bases which requires action with Constitutional authority. For extraordinary and high-power movements there is even more cause for considerate scrutiny.

The statute under which this suit is brought, and the regulations invoked, as children thereof, have been whittled down so that there is a slender splinter.

### Second.

Earle Taylor and O. L. Nelms, a co-partnership, doing business under the name of Wood Lumber Company, are the defendants.

The attorneys who filed the pleadings for the plaintiff have been changed from time to time, but from the outset the defendants have had the same ones. They have been busy; a number of motions and dilatory pleas and amendments have been indulged. Among them is and was a bill for particulars, which, apparently, reduced the potential recoverable from $71,000 to some $3,966, made up of April, August and September items.

On yesterday afternoon, the attorneys for the defendants say they discovered that the clients whom they had represented during these months and for whom they had been appearing, and certifying, as a matter of fact, were not the owners of the business at all in July, August, or September, but that a man by the name of Stevens had been the owner since July 1, 1946. That would leave recoverable, if anything is recoverable against the original defendants, the April items.

When the application to amend was made by the defendants on this morning, following the disclosure to the attorneys of the non-ownership of Taylor and Nelms, and the real ownership by Stevens, beginning July 1, the court gave the opportunity to both parties to bring in Mr. Stevens, so that he would be bounden by a judgment.

After conferring, they concluded to go forward with it as it is, since there could be no judgment rendered against Mr. Stevens, and the plaintiff would be free, if he had a right to bring a suit against anybody, to bring a suit against Mr. Stevens, and recover that for which Stevens was liable. It would, of course, also leave the suit against the original defendants, Taylor and Nelms, for such liability, if any, as existed, because of the April transactions.

So, that is the suit we have been trying.

Along with that suit has been carried the dilatory motion, made in time, to the effect that the substituted plaintiff had no right to bring this suit, as heretofore treated.

This second serious matter has been injected, and I find the facts on it now, so that if there is any error in the first holding with reference to the inability of the plaintiff to bring the suit, that the upper court will have the benefit of these findings, and may enter the judgment that this court would enter in the event the plaintiff had the right to recover anything, if it sees fit.

That right, that question is this: Was there a sale made on July 1, 1946, by Taylor and Nelms to Stevens?

The testimony on that shows that the written contract which has been offered in evidence recites a consideration of $100 paid, and other considerations.

The testimony of Taylor is that he received $6,700, in cash.

The testimony of Stevens is that he paid $7,200, in cash.

Now, I do not care how learned, nor how ignorant anyone is, all three could not be true, and they are not true.

Another thing is that the testimony shows, that Taylor and Nelms gave Stevens the right to use the fictitious name of Wood Lumber Company. The state statute which requires one who does business under a name other than his own, has a certain purpose; it gives the creditors who deal with the man who is doing business un-

der a fictitious name, the right to pursue him, if and when he seeks to get out.

In addition to this testimony, is the fact that Mrs. Taylor stayed there, worked there, and says she was not working for Mr. Stevens. She was there on the job. Stevens was introduced to the investigators; he did not say anything to the investigators about him, Stevens, owning the place, instead of Taylor. Mrs. Taylor told the investigators Taylor owned two-thirds and Nelms, one-third. The whole thing just doesn't look good to the court, and I cannot stifle my own conscience by following a trail of that sort. It does not look straight to me. Too many inconsistencies. There are too many turns in it. Too many things that I do not understand in it. Taylor brought the same lumber there, to the same place, and sold it in the same place, to the same customers, who had been his customers all along, and the same people were employed. Certainly, Mrs. Taylor was there with authority over the papers.

 So, I find as a fact that a bona fide sale did not take place. There was no good faith sale of that property, or that business on July 1, 1946.

 I find, however, that the right to recover, in event the court should be in error about the right of the plaintiff to ask for anything, is $11,990.79, which is treble damages on the sum of $3,996.93; which $3,996.93 is made up of three aggregates, one of which is shown for the six items in April, amounting to $1,618.74; and, the other of which is made up of five items, shown in August, and amounting to $1,343.20; and, the other of which is an aggregate of six items in September, in the sum of $1,004.99.

The judgment for the amount of $11,990 should go against Mr. Taylor and Mr. Nelms, doing business as the Wood Lumber Company, in event the present plaintiff has a right to bring this suit, which this court holds he does not have. But, if there is an appeal, and the upper court thinks that this court is in error about that holding, then, and in that event, the upper court will have the benefit of these findings of fact on these accounts, and upon these other questions, so that it may render judgment, in event it should appear appropriate for it to do so, and order that judgment to be entered by this court.

I, therefore, as a finding of fact, include the fact that Exhibit "A" filed as an answer to the desire for a bill of particulars, to the plaintiff's petition, is correct as to the ceiling price, and the amount of overcharge.

I find the amounts that I have just stated, in the aggregate, and in the treble are and were based upon ceiling prices and the overcharge.

I also find as a fact that there was no sale on July 1, 1946, as I have already said.

As a conclusion of law, somewhat repetitious, I find that the plaintiff has no right to bring this suit; and, second, if he had such right, then and in that event, judgment should go for the amount indicated.

But judgment will go now for the defendants.

Also that Mr. Stevens is not bounden by this judgment in any way and is subject to suit, if and when there is any proper authority to sue him, for this particular amount, so there can be no question about res adjudicata.