379 F.2d 100
 The ALABAMA GREAT SOUTHERN RAILROAD COMPANY et al., Petitioners,
v.
FEDERAL MARITIME COMMISSION and
United States of America, Respondents.
Tampa Port Authority, the Atchison, Topeka & Santa Fe Railway Company et al., North Atlantic Ports Association, Intervenors.
 No. 19798.
 United States Court of Appeals District of Columbia Circuit.
 Argued October 20, 1966.
 Decided April 17, 1967.
 
 Mr. Robert J. Corber, Washington, D. C., with whom Mr. Henry J. Karison, Washington, D. C., was on the brief, for petitioners.
 
 
 1
 Mr. Walter H. Mayo, III, Atty., Federal Maritime Commission, with whom Asst. Atty. Gen. Turner, Messrs. James L. Pimper, Gen. Counsel, Robert N. Katz, Sol., Federal Maritime Commission, and Irwin A. Seibel, Atty., Dept. of Justice, were on the brief, for respondents. Mr. M. C. Miskovsky, attorney, Federal Maritime Commission, at the time the record was filed, also entered an appearance for respondent Federal Maritime Commission.
 
 
 2
 Mr. J. Alton Boyer, Washington, D. C., for intervenor Tampa Port Authority.
 
 
 3
 Mr. Francis A. Scanlan, Philadelphia, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Mr. John A. Kennedy, Jr., Washington, D. C., was on the brief, for intervenor North Atlantic Ports Ass'n.
 
 
 4
 Mr. Thormund A. Miller, Washington, D. C., entered an appearance for intervenor Atchison, T. & S. F. Ry. Co. and others.
 
 
 5
 Before BAZELON, Chief Judge, and DANAHER, Circuit Judge, and BASTIAN, Senior Circuit Judge.
 
 
 6
 PER CURIAM.
 
 
 7
 This case involves the jurisdiction of the Federal Maritime Commission under the Shipping Act of 1916 to require the filing of tariffs, on or before their effective dates, by rail carriers owning or controlling port terminal facilities. Over a period of years in furtherance of rule-making the Commission gave notice and conducted hearings which resulted in the Commission's General Order 15, 46 C.F.R. Part 533 (1966), amended on June 24, 1966 (31 Fed.Reg. 8815). It is this General Order 15 as amended which is here challenged. By this Order the Maritime Commission requires that the railroads who own or control port terminals, which handle cargo delivered and picked up by modes of transportation other than rail, shall file with the Commission all separately stated terminal rates and rules and regulations affecting rates. See section 17, Shipping Act, 1916, 46 U.S.C. § 816 (1964). Specifically excluded from the requirement of the Order are rates included in the line-haul rates of railroads.
 
 
 8
 The marine terminal facilities here involved consist of piers at which ships dock to load and discharge cargo. Space is provided on the piers for the storage of incoming and outgoing cargo. Trucks are permitted access to the piers and are charged a wharfage fee. It is clear that such facilities are subject to regulation by the Federal Maritime Commission except insofar as section 33 of the Shipping Act, 46 U.S.C. § 832 (1964) precludes such regulation. State of California v. United States, 320 U.S. 577, 586, 64 S.Ct. 352, 88 L.Ed. 322 (1944).[1]
 
 
 9
 Section 33 provides in pertinent part that the Shipping Act
 
 
 10
 "shall not be construed to affect the power or jurisdiction of the Interstate Commerce Commission, nor to confer upon the Federal Maritime [Commission] * * * concurrent power or jurisdiction over any matter within the power or jurisdiction of such Interstate Commerce Commission * * *." 46 U.S.C. § 832 (1964).
 
 
 11
 It is to be noted that whereas the above-quoted statute proscribes concurrent jurisdiction over the same "matter" it does not preclude concurrent jurisdiction over the same "persons."[2] Where a person performs functions some of which are subject to regulation under the Shipping Act and others under the Interstate Commerce Act, the same person might be subject to the jurisdiction of one or the other Commissions depending upon the subject matter to be regulated.[3] While it is manifest that section 33[4] did not contemplate overlapping regulation pertaining to the same subject matter, Congress was aware that the two areas of jurisdiction would touch, and that the respective Commissions might jointly work out the limitations of their jurisdiction in accord with the statutory mandates.[5] Such a joint determination was held in connection with freight shipments to and from railroad piers in Boston. The Federal Maritime Commission examined the railroads' wharf practices and the Interstate Commerce Commission considered the absorption of wharfage charges in line-haul rates. Interchange of Freight at Boston Terminals, 2 U.S.M.C. 671 (1942) and Interchange of Freight at Boston Piers, 253 I.C.C. 703 (1942). As this joint determination clearly indicates, there are instances in which both agencies may need the same information to discharge their separate but dovetailing responsibilities. Cf. Baltimore and Ohio R. Co. v. United States, 201 F.2d 795 (3 Cir.), reaff'd, 208 F.2d 734 (3 Cir. 1953).[6]
 
 
 12
 Petitioners further contend that the Federal Maritime Commission lacks the power to require the filing of the tariffs by "other persons" subject to the Act but that the tariff filing requirements are confined to "water carriers." We deem this argument without merit.[7] Section 21 provides that the Commission "may require any common carrier by water, or other person subject to this chapter * * * to file with it * * * any periodical or special report, or any account, record, rate or charge * * * appertaining to the business of such carrier, or other person subject to this chapter." 46 U.S.C. § 820 (1964). Moreover, section 43 of the Shipping Act provides: "The Commission shall make such rules and regulations as may be necessary to carry out the provisions of this chapter." 46 U.S.C. § 841a (1964).
 
 
 13
 The order here complained of followed extensive rule-making proceedings in which proposals had been submitted by numerous affected interests. The Commission had acted in furtherance of section 17 of the Act, 46 U.S.C. § 816 (1964) under which the Commission may prescribe just and reasonable regulations and practices upon a finding that any unjust or unreasonable regulation or practice is being followed by a person subject to the Act.
 
 
 14
 What seems most to disturb the Petitioners is not that they are asked to supply tariff information,[8] but that such data are called for in advance of the effective date of the tariffs. As the Petitioners see it, the contested Order is the first step leading to Maritime Commission regulation of their rates, rules and practices pertaining to facilities over which Petitioners claim the Maritime Commission has no jurisdiction. Although the Maritime Commission insists it is only seeking information,[9] it points out that this information is necessary in advance to avoid the possibility of deferring corrective action until after it is required. We need not seek to penetrate all background to ascertain some vague but unspoken Commission intent. We take the Order at its face and view it in light of what the Commission represents to the court as its purpose and appraise the Order in terms of the applicable statutes. We may thus observe that the Interstate Commerce Act and the Shipping Act merely adumbrate the respective jurisdictions, and the integrated nature of the activities here involved requires a mutual overlapping of information so that each Commission is fully informed concerning matters reasonably related to its jurisdiction. If inquiry looking toward regulation of Petitioners' practices shall assertedly become necessary after the effective date of such tariffs, there is no reason to believe that the Maritime Commission would exceed its jurisdiction. Nor can we doubt that Petitioners will be alert to take appropriate steps should they deem ultimate possible Commission action to exceed the Commission's powers. We may observe that the past practice of holding joint hearings to consider matters of mutual concern to both the Interstate Commerce Commission and the Federal Maritime Commission gives assurance that if action is necessary[10] to remedy any ills which the statutes were designed to eliminate, the respective Commissions will carefully limit their exercise of authority to those matters committed to their respective agencies.
 
 
 15
 In any event, at this point we would not be warranted in attempting to delineate the limits of such jurisdiction before any action has been taken or proposed by either Commission.[11] We are satisfied that the information here sought is reasonably related to the regulatory functions entrusted to the Maritime Commission and that the challenged Order is appropriately designed to achieve a permissible purpose. That the data must be furnished on or before the effective dates of tariffs as filed in no way militates against our conclusion that the Order has placed upon the Petitioners no unreasonable or unpermitted burden.[12]
 
 
 16
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 In theCalifornia case, the State of California and the City of Oakland operated port terminal facilities in the Port of San Francisco. The Maritime Commission found that terminals along the waterfront, including those of California and Oakland, were engaged in preferential and unreasonable practices, in violation of sections 16 and 17 of the Shipping Act, in that they allowed excessive free time and made noncompensatory charges for their services. The Commission prescribed schedules of maximum free time and of minimum charges to reflect the actual cost of services.
 The Court held, inter alia, that California and Oakland as owners of such facilities were subject to regulation as "other persons" subject to the Shipping Act. The Court also upheld the Commission's power to set the minimum rates to remedy sections 16 and 17 violations although the Maritime Commission is not given express rate-making power over "other persons." The opinion notes "[T]here can be no doubt that wharf storage facilities provided at shipside for cargo which has been unloaded from water carriers are subject to regulation by the Commission." 320 U.S. at 586, 64 S.Ct. at 357.
 
 
 [2]
 Cf. United States v. American Union Transport, 327 U.S. 437, 452, 66 S.Ct. 644, 652, 90 L.Ed. 772 (1946), which is not to the contrary. The Court there pointed out that the use of the limiting language of other person "in connection with a common carrier by water" was to prevent a possible construction of the term "other person" to includeall terminal facilities, even those used in connection with interstate or foreign commerce not by water.
 
 
 [3]
 The Interstate Commerce Commission by letter of May 4, 1966 informed the General Counsel of the Federal Maritime Commission that the Department of Justice and the Maritime Commission "are authorized to represent to the Court of Appeals * * * that the ICC has considered the [proposed] rules and amendments thereto and has no objections at this time."
 
 
 [4]
 46 U.S.C. § 832 (1964)
 
 
 [5]
 Hearings on H.R. 14337 before the Committee on Merchant Marine and Fisheries, House of Representatives, 64th Cong., 1st Sess., 15-16 (1916).
 
 
 [6]
 The Interstate Commerce Act in 49 U.S.C. § 920(b) (3) (1964) provides that nothing in that Act shall be construed to repeal the provisions of the Shipping Act, 1916, "insofar as such Act provides for the regulation of persons included within the term `other person subject to this Act' as defined in such Act."
 It seems clear enough that while the Petitioners are carrying on the business of furnishing terminal facilities in connection with common carriers by water and hence come within the Maritime Commission jurisdiction to that extent, their overlapping and concurrent railroad operations remain subject to the jurisdiction of the Interstate Commerce Commission.
 
 
 [7]
 Cf. United States v. American Union Transport, Inc.,supra note 2; and see Isbrandtsen-Moller Co., Inc. v. United States, 300 U.S. 139, 57 S.Ct. 407, 81 L. Ed. 562 (1937), where the Court upheld the validity of an order requiring a water carrier to furnish data regarding rates, charges and terminal rules and regulations under section 21 of the Shipping Act.
 
 
 [8]
 Indeed, many of the railroads supplied courtesy copies of such information with the Commission. During rule-making, the Commission tells us on brief, some 86 parties had filed comments respecting the proposed rules
 
 
 [9]
 The Commission tells us on brief "The Commission's order is designed only to keep the Commission fully informed concerning matters subject to its jurisdiction."
 
 
 [10]
 The Act itself provides that action can be taken relating to any violation only after full hearing. 46 U.S.C. § 822 (1964)
 
 
 [11]
 Pacific Coast European Conference v. Federal Maritime Commission, ___ U.S. App.D.C. ___, p. ___, 376 F.2d 785, p. 790) (1967). "[T]he possibility of abuse in the future does not establish present abuse; and the courts remain open for business."
 
 
 [12]
 United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Far East Conference v. Federal Maritime Commission, 119 U.S.App.D.C. 110, 115, 337 F.2d 146, 151 (1964), cert. denied, 379 U.S. 991, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965)