**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,**

v.

**The CITY OF MEMPHIS, TENNESSEE, Defendant.**

**No. 83–2672–MA.**

United States District Court,
W.D. Tennessee, W.D.

Dec. 29, 1983.

Carol H. Daniel and George C. Bradley, Memphis, Tenn., for plaintiff.

Heiskell Weatherford, and Clifford D. Pierce, Jr., Memphis, Tenn., for defendant.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

McRAE, Chief Judge.

The Equal Employment Opportunity Commission (EEOC), in an Age Discrimination in Employment Act of 1967 (ADEA) case, filed this action for enforcement of a

subpoena duces tecum against the City of Memphis (City). This action was referred to the Magistrate who recommended, after a hearing, that the subpoena be enforced. Before the Court is City's Exceptions and Motion to Dismiss, which for the first time, relying on *INS v. Chadha,* — U.S. —, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), questions the EEOC's authority to conduct an investigation.

The enforcement of ADEA was transferred from the Department of Labor to the EEOC in the Reorganization Plan of 1978. 43 Fed.Reg. 19807, 92 Stat. 3781. This plan was proposed by the President and became law when the Congress failed to exercise its so-called legislative veto pursuant to the Reorganization Act of 1977. Pub.L. No. 95–17, 91 Stat. 29. In *Chadha,* the Supreme Court invalidated the one-House veto as an unconstitutional exercise of congressional power and a violation of the bicameralism and presentment criteria of Article I of the Constitution. The City relies on *EEOC v. Allstate Insurance Co.,* 32 Fair Empl.Prac.Cas. (BNA) 1337 (S.D. Miss.1983), which held the Reorganization Plan of 1978, and actions pursuant thereof, unconstitutional, because it was passed using the one-House veto mechanism.[1] The EEOC contends that the City lacks standing; the concededly unconstitutional one-House veto clause is severable; and notwithstanding severability, Congress and the President have ratified the transfer of power.

### THE CHADHA DECISION

Since 1932, the one-House veto device has been used by Congress to control authority delegated to the Executive Branch, without having to resort to the laborious bicameral and presentment requirements of Article I, § 7, cl. 3. In *INS v. Chadha,* — U.S. —, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), the Supreme Court declared that the one-House veto mechanism was unconstitutional. *Chadha* was an alien whose nonimmigrant student visa had expired, and had been ordered to show cause why he should not be deported. The Attorney General suspended the deportation and reported his action to Congress pursuant to a one-House veto clause in the Immigration and Nationality Act, 8 U.S.C. § 1254(c)(1). The House of Representatives vetoed the suspension under § 1254(c)(2). The Supreme Court upheld the Attorney General's suspension.

The one-House veto was essentially legislative action. When Congress delegated authority to the Attorney General to make deportation decisions, it was required by the Court to follow the bicameral and presentment provisions to alter the Executive action. *Id.* at 2786.

### STANDING

The EEOC asserts that the City of Memphis has no standing to contest the validity of its enforcement power because the City has suffered no injury, and the City cannot show that it would have fared any differently if the ADEA enforcement power had remained with the Department of Labor.

In *Chadha,* the Court held that the alien had standing to challenge the congressional veto in that he would be deported by virtue of Congress' direct action. The EEOC points out that in the instant case Congress has not exercised its veto power and thus claims that the City has suffered no injury. In *Chadha,* the Court declared that the use of a veto mechanism, in lieu of the bicameralism and presentment procedures was an unconstitutional method of accomplishing legislative acts.

In the instant case the nature of the injury is different (assuming that the one-House veto clause is non-severable). To reorganize the Executive Branch or shift functions which Congress has delegated from one department to another, Congress must pass legislation to that effect. In this case, however, the President proposed the Reorganization Plan and it became law

---

1. *EEOC v. Allstate* is the only published case of which this Court is aware addressing this issue. It is analyzed because it is advanced so strongly by the defendant.

when Congress failed to exercise its veto. Therefore, it is argued that the law itself was passed in an unconstitutional manner, and as such, actions taken pursuant to the act are unconstitutional; thus a person regulated by the unconstitutional act suffers a direct concrete injury. Therefore, it is further argued the EEOC lacked the authority to issue the subpoena and its enforcement would constitute a palpable injury.

## 1978 REORGANIZATION PLAN

■ The Reorganization Plan transferred administration and enforcement of ADEA from the Department of Labor to the EEOC. (The subpoena power of the EEOC derives from the incorporation by reference of Section 9 of the Fair Labor Standards Act, 29 U.S.C. § 209, *as amended*, which incorporates by reference Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49.)

The Reorganization Plan was promulgated by the President in order "to consolidate[ ] [f]ederal equal employment opportunity activities" and to provide "for the first time, the foundation of a unified, coherent [f]ederal structure to combat job discrimination in all its forms." Presidential Message Accompanying Reorganization Plan No. 1 of 1978, *reprinted in* 1978 Public Papers of the President, Vol. I, p. 400.

The City's contention is that the Reorganization Plan was essentially legislative in effect. The issue then arises, does the one-House veto provision, which *Chadha* prohibits, make the entire Reorganization Plan unconstitutional, or, can the one-House veto clause be severed, leaving intact a valid, constitutional, reorganization plan? Thus, if the clause can be severed, the Reorganization Act is a legislative grant to the President to reorganize the bureaucracy within certain parameters. If not, the Reorganization Plan is the type of deviation from bicameralism and presentment prohibited by *Chadha*, and must be found unconstitutional.

## SEVERABILITY

In *Chadha*, a severability clause was included in the statute thus giving "rise to a presumption that Congress did not intend the validity of the Act, as a whole, or any part of the Act, to depend upon whether the veto clause ... was invalid." *INS v. Chadha*, 103 S.Ct. at 2774. No such clause was present in the Reorganization Act. The *Allstate* court relied on *Carter v. Carter Coal*, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936) for the proposition that the absence of a severability clause raises a presumption "against the mutilation of a statute; and if any provision be unconstitutional, the presumption is that the remaining provisions fall with it." *Id.* at 312, 56 S.Ct. at 873. The modern rule was stated in *Consumer Energy Council v. FERC*, 673 F.2d 425, 442 (D.C.Cir.1982) *aff'd* — U.S. —, 103 S.Ct. 3556, 77 L.Ed.2d 1402, 1403, 1413 (1983) (post *Chadha*), where the court considered the "question of where the presumption lies [to be] mostly irrelevant." It quoted *United States v. Jackson*, 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 1218 n. 27, 20 L.Ed.2d 138 (1968) which stated: " '[W]hatever relevance such an explicit clause might have in creating a presumption of severability ... the ultimate determination of severability will rarely turn on the presence of such a clause.' "

The Supreme Court in *Chadha* analyzed two factors to determine if the clause was severable: (a) the legislative history; and (b) if what remained after severance was "fully operative as a law." *INS v. Chadha*, 103 S.Ct. at 2274–75.

The Court finds persuasive the arguments advanced by the EEOC that the importance of legislation to eliminate waste and overlap in the bureaucracy dictated taking the risk of unconstitutionality. Important reorganizations carried out included the Employment Retirement Income Security Act, international trade functions by the Secretary of Commerce and the set up of the International Communication Agency and Federal Emergency Management Agency. It is much more likely that Congress intended these programs to survive instead of perish with the one-House veto clause.

## CONGRESSIONAL RATIFICATION

The EEOC argues that even if the one-House veto clause is non-severable, subsequent enactments respecting bicameralism and presentment have validated the Reorganization Act. In *Swayne & Hoyt, Ltd. v. United States*, 300 U.S. 297, 301, 57 S.Ct. 478, 479, 81 L.Ed. 659 (1937), the Supreme Court held that any failure of Congress to properly transfer the shipping Board's powers "had been remedied by various later acts mentioning the Executive Order, and making appropriations to the Department of Commerce for payment of expenses of carrying out the provisions of the shipping act ...."

Ratification and validation of prior acts or unauthorized actions have been recognized where there is a specific reference in another act to the action and by continued appropriations. *Fleming v. Mohawk Co.*, 331 U.S. 111, 116, 67 S.Ct. 1129, 1132, 91 L.Ed. 1375 (1947) and *Isbrandtsen-Moller Co. v. United States*, 300 U.S. 139, 147–48, 57 S.Ct. 407, 411–412, 81 L.Ed. 562 (1937).

The second method of validation by the funding of the contested function was recognized in *Isbrandtsen-Moller Co.*, 300 U.S. at 147, 57 S.Ct. at 411; *Brooks v. Dewar*, 313 U.S. 354, 360–61, 61 S.Ct. 979, 981–982, 85 L.Ed. 1399 (1941); and *Young v. TVA*, 606 F.2d 143, 147 (6th Cir.1979).

Congress has made specific references to and appropriations for the Reorganization Plan, when it passed the Civil Service Reform Act of 1978. It provided that "[a]ny provision in either Reorganization Plan Numbers 1 or 2 of 1978 inconsistent with any provision of this Act is hereby superseded." 5 U.S.C. § 1101 (Supp. IV 1980).

Congress has repeatedly appropriated monies requested by the EEOC for the enforcement of the transferred functions since those transfers were effectuated in fiscal year 1979. As to fiscal year 1982 and 1983, Congressional intent to fund specific functions transferred to the EEOC pursuant to Reorganization Plan No. 1 of 1978 is evident from the statutes themselves. For fiscal year 1983, Congress appropriated funds "[f]or necessary expenses of the Equal Employment Opportunity Commission as authorized by Title VII of the Civil Rights Act of 1964, as amended, 29 U.S.C. 206(d) [the Equal Pay Act] and 621–634 [the Age Discrimination in Employment Act]...." Jt.Res. of Dec. 21, 1982, Pub.L. 97–377, 96 Stat. 1830, 1874.

The Court therefore finds that Congress, by specific reference to and appropriations for the EEOC, has ratified the Reorganization Act of 1977 and that the EEOC is constitutionally carrying out the enforcement of the ADEA.

## MAGISTRATE'S REPORT

■ In his Report and Recommendation, the Magistrate has analyzed each of the City's objections to the eight categories of documents contained in the EEOC's subpoena duces tecum. He is of the opinion that the EEOC's subpoena meets all of the criteria enumerated in *EEOC v. Surburban Transit System*, 538 F.Supp. 530, 532 (N.D.Ill.1982), and thus, is enforceable. The City has not advanced any new arguments. Further, the City has failed to support its conclusory assertion that the subpoena was a punitive measure.

The Court therefore adopts the Magistrate's Report and Recommendation and Orders that the statute of limitations be equitably tolled from March 24, 1983, until the documents sought in the subpoena are made available to the EEOC and that the subpoena duces tecum be enforced. The City has thirty (30) days from the entry of this Order to produce the requested documents. The documents ordered produced herein, will, however, be subject to the confidentiality rules outlined in 29 C.F.R. §§ 1601.1 et seq., as approved in *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981).

IT IS SO ORDERED.