**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**RADIO MONTGOMERY, INC., Defendant.**

**Civ. A. No. 80–0366(R).**

United States District Court, W.D. Virginia, Roanoke Division.

Feb. 22, 1984.

**568**

Steve Roby, Trial Atty., Baltimore, Md., Leroy D. Clark, James N. Finney, E.E.O.C., Washington, D.C., John S. Edwards, U.S. Atty., Roanoke, Va., for plaintiff.

Raymond R. Robrecht, Salem, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff, the Equal Employment Opportunity Commission (EEOC), brought this civil action to enforce the Equal Pay Act (EPA), Pub.L. No. 88–38, 77 Stat. 56 (1968), 29 U.S.C. § 206(d). Specifically, the EEOC alleges that defendant, a Virginia radio broadcast corporation, violated the EPA by paying its female sales representatives lower wages than their male counterparts performing equal work. The EEOC seeks to enjoin defendant from further violating the Act and to recover backwages for defendant's female employees affected by its past wage violations.

The action is currently before the court on defendant's motion for summary judgment. Counsel for both parties argued their positions in open court on January 5, 1984. Since the court finds there to be no disputed material facts germane to the legal issues presented by defendant's motion, the motion is ripe for disposition.

The basis for defendant's motion is its assertion that the EEOC is without authority to enforce the EPA because the legislation allowing the President to transfer enforcement responsibilities among various departments and agencies contained a legislative veto provision. In particular, statutory responsibility for administering and enforcing the EPA and other equal employment opportunity legislation was transferred from the Secretary of Labor to the EEOC under Reorganization Plan No. 1 of 1978. The Plan was carried out pursuant to the Reorganization Act of 1977, Pub.L. No. 95–17, 91 Stat. 29, 5 U.S.C. § 901 *et seq.* Under the Act the President was authorized to restructure and reorganize the executive branch and some of its agencies. 5 U.S.C. §§ 901, 903. The Act, however, included a legislative veto provision in § 906(a) which permitted either House, acting alone, to block any reorganization plan submitted by the President by passing a resolution of disapproval.

Defendant asserts that the existence of the legislative veto provision in the 1977 Act made the transfer of authority to the EEOC pursuant to the 1978 Plan a nullity under the reasoning of *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). Thus, under this line of reasoning, if accepted, the action would have to be dismissed since the EEOC would lack authority to sue for violations of the EPA by private employers.

In support of its position that it does possess the necessary statutory authority to enforce the EPA in its own name the EEOC raises two major arguments.[1] First, it asserts that the legislative veto provision contained in § 906(a) is severable from the remainder of the 1977 Act, which is capable of standing on its own as a proper delega-

---

**1.** The EEOC also claims that the defendant lacks standing to mount a constitutional challenge to the Act or Plan, arguing that the defendant has failed to demonstrate "injury in fact." The court finds this contention meritless. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464,

102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In addition, the EEOC contends that should the court find the 1977 Act unconstitutional in its entirety, and that Congress has not subsequently ratified the reorganization, the court should not apply its ruling retroactively to bar EEOC prose-

tion of legislative power to the President. Second, should this court find the legislative veto provision non-severable, the EEOC claims that, by subsequent statutory reference and appropriation of funds, Congress has ratified and validated the 1978 Plan, including the transfer of EPA enforcement authority to the EEOC.

To date several district courts have addressed this precise issue.[2] Most have concluded that the EEOC has valid enforcement authority. *Muller Optical Co., et al. v. EEOC,* 574 F.Supp. 946 (W.D.Tenn.1983), *appeal docketed,* No. 83–5889 (6th Cir. Nov. 29, 1983); *EEOC v. Jackson County Missouri,* No. 83–1118–CV–W–1 (W.D.Mo., Dec. 13, 1983); *EEOC v. City of Memphis, Tennessee,* 581 F.Supp. 179 (W.D.Tenn. 1983). *EEOC v. Cudahy Foods Co.,* 588 F.Supp. 13 (W.D.Wash.1983); *EEOC v. El Pasa Natural Gas Co.,* No. EP83–CA–108 (W.D.Tex., Jan. 16, 1984). Two district courts have held that the EEOC lacks authority to enforce the EPA since the 1977 Act contained a legislative veto provision. *EEOC v. Allstate Insurance Co.,* 570 F.Supp. 1224 (S.D.Miss.1983), *appeal docketed,* No. 83–4652 (5th Cir. Oct. 19, 1983). *EEOC v. Westinghouse Electric Corp.,* No. 83–1209 (W.D.Pa., Jan. 5, 1984), *notice of appeal filed* (Jan. 31, 1984).

Having carefully considered the reasons underlying these decisions, the court finds those expressed by the *Muller Optical* court to be the most sound. The *Muller Optical* decision rests on two grounds. First, after a lengthy analysis of the Act's legislative history, the court concluded that the legislative veto provision is severable from the remainder of the Act since "[n]owhere is it evident that Congress would not have enacted the mechanism for reorganization of the executive branch absent the use of the legislative veto provision." Second, the court decided that based on the reasoning of *Isbrandtsen-Moller Co. v. United States,* 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562 (1937), Congress ratified the transfer of enforcement authority to the EEOC through subsequent appropriations acts and the Civil Service Reform Act of 1978.

This court agrees with these reasons expressed by the *Muller Optical* court and adopts them as its own. Therefore, in an accompanying Order to be entered this day, defendant's motion for summary judgment will be denied.[3]

---

cution of this action. However, the court finds it unnecessary to address this question.

**2.** Many of the district courts have dealt with the EEOC's authority to enforce the ADEA. Reorganization Plan No. 1 of 1978 transferred to the EEOC not only authority to administer and enforce the EPA, but also the Age Discrimination in Employment Act of 1967 (ADEA) and other equal employment opportunity legislation. Therefore, since all these functions were transferred by the Plan pursuant to the 1977 Act, it is immaterial that these courts considered the EEOC's authority to enforce the ADEA rather than the EPA.

**3.** This conclusion is buttressed by the court's belief that the 1977 Act in no way altered or affected the substantive rights of the citizenry, which was not the situation in *Chadha.* The Act and Plan simply transferred enforcement authority from one part of the executive branch to another. To force the absolute unraveling of an administrative and enforcement system in place for over three years simply because Congress could have (but did not) blocked the transfer, would serve no useful purpose, restore no substantive rights lost as a result of that transfer, and only hinder governmental enforcement efforts in the near future.