EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

MARTIN INDUSTRIES, INC.,
Defendant.

Civ. A. No. 83–AR–5699–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

Feb. 24, 1984.

Memorandum Opinion and Order
March 5, 1984.

David L. Slate, Gen. Counsel, Michael A.
Middleton, Associate Gen. Counsel, E.E.
O.C., Washington, D.C., Jerome C. Rose,
Regional Atty., W.L. Williams, Jr., Supervi-
sory Trial Atty., Eugene W. Fuquay, Sr.
Trial Atty., E.E.O.C., Birmingham, Ala., for
plaintiff.

James P. Alexander, James Walker May,
Eldridge D. Lacy, Bradley, Arant, Rose &
White, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ACKER, District Judge.

By order entered on February 13, 1984,
this Court conditionally granted the joint
motion of the parties for a stay, and grant-
ed the parties to and including February
22, 1984, to present a settlement agreement
satisfactory to the Court. No such agree-

ment has been presented. Instead, the parties on February 22, 1984, requested another stay, which is due to be denied, and on February 23, 1984, presented a proposed consent decree which is not satisfactory to the Court. A copy of the said proposed decree is attached hereto as Exhibit "A". Not only does the proposed decree come too late but it purports to confer jurisdiction on this Court and by "agreement" to confer upon a plaintiff which has no standing to complain a standing to complain. As will hereinafter become apparent, this Court does not believe that plaintiff, Equal Employment Opportunity Commission (EEOC), had the jurisdiction to investigate the charges of a violation of the Equal Pay Act as here alleged, or the authority to bring this action, and this Court is unwilling to become a party to an adjudication, including an injunction, which purports to be binding but which, in the Court's opinion, would not be binding. Therefore, the Court will proceed to consider defendant's motion for summary judgment.

On September 29, 1983, the EEOC filed this action against Martin Industries, Inc. (Martin), charging a violation of the Equal Pay Act, 29 U.S.C. § 206. Martin filed a motion for summary judgment based on *EEOC v. Allstate Insurance Company,* 570 F.Supp. 1224 (S.D.Miss.1983), which holds that the rationale of the Supreme Court in *Immigration & Naturalization Service v. Chadha,* — U.S. —, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), requires the conclusion that the entire Reorganization Act of 1977 is invalid and therefore is ineffectual in its attempt to transfer the authority to administer the Equal Pay Act from the United States Department of Labor to the EEOC. The EEOC countered with *Muller Optical Company v. EEOC,* 574 F.Supp. 946 (W.D.Tenn.1983), and *EEOC v. City of Memphis,* 581 F.Supp. 179, 33 FEP Cases 1089 (W.D.Tenn.1983), both of which reject *EEOC v. Allstate.* If *EEOC v. Allstate* is correct, the EEOC had no jurisdiction or authority, and therefore this Court cannot allow the EEOC to speak in this Court on behalf of individuals in an Equal Pay Act case.

This Court has carefully compared the reasoning employed in these three conflicting cases, has read Martin's brief, a copy of which is attached hereto as Exhibit "B", and is satisfied that Judge Barbour in *EEOC v. Allstate,* and Martin in the instant case, have much the better of the argument. Judge Barbour's reasoning is impeccable. If this judge were not bound by *stare decisis* and had his choice in the matter he would join Mr. Justice White in his dissent in *Chadha,* and would find nothing unconstitutional in a congressional attempt to shackle what Congress perceived to be a runaway rule-making monster. This Court sympathizes with congressional recognition that the retention of a right of legislative veto may be the only practical means of reining in the law-making bureaucracy, which is no longer truly a part of the Executive Branch (and thus theoretically under Presidential control) but rather now constitutes a Fourth Branch with its own mind and will. However, this judge recognizes his duty under *stare decisis,* as did Judge Barbour, and acknowledges that it gets its marching orders from the majority of the Supreme Court and not from its dissenters.

Undoubtedly this issue will not finally be resolved in the Southern District of Mississippi, nor in the Western District of Tennessee, nor in the Northern District of Alabama, but in the Supreme Court of the United States. Nevertheless, this Court is willing to take its stand with Judge Barbour unless and until the Eleventh Circuit or the Supreme Court finds a way around *Chadha.*

An appropriate order is being contemporaneously entered.

## EXHIBIT A

### CONSENT DECREE

This action was instituted by the Equal Employment Opportunity Commission, an agency of the United States, alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d). Plaintiff and defendant, Martin

Industries, Inc., (hereinafter "Martin") have stipulated to the jurisdiction of the Court for purposes of the entry of this Decree, over the respective parties and the subject matter of this action, and have waived the entry of findings of fact and conclusions of law.

Nothing herein shall be deemed, in any matter or for which purpose whatsoever, an admission of any act unlawful under the Equal Pay Act, 29 § 206(d) and 215(a)(2) or any other statute. This Decree shall not be used or introduced for any purpose whatsoever in any legal proceeding except in the instant case. Solely for the purpose of amicably resolving the disputed claims and reducing the expense of litigation to both parties, defendant joins with plaintiff in requesting this Court to adjudge as follows:

It is ORDERED, ADJUDGED, and DE-CREED as follows:

1. This Decree resolves all claims for back pay, liquidated damages, costs, and injunctive relief arising out of equal pay issues as between the parties to this lawsuit.

2. Defendant, its officers, agents, employees, successors, assigns and all persons in active concert or participation with it is hereby enjoined from discriminating, at its Florence headquarters, between employees on the basis of sex by paying wages to employees in such establishment at rates less than at which it pays wages to employees of the opposite sex in such establishment for equal work on jobs, the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions. However, nothing herein shall be deemed to modify or alter any of the affirmative defenses contained in the Equal Pay Act, as amended.

3. Defendant shall not discriminate or retaliate in any way against any person who or on whose behalf relief was sought or who participated in any manner in any investigation proceeding or hearing under the Equal Pay Act of 1963, as amended.

4. Within fifteen days of the entry of this Order, defendant is ordered to pay to (i) Barbara J. Smith, the sum of $951.80; (ii) to Renae H. Shannon, the sum of $1,772.66; and (iii) to Joyce Crowder, the sum of $3,275.54. Such payment shall be made subject to applicable federal and state income tax withholding. Checks, in the amounts set out less withholding, shall be tendered to the Equal Employment Opportunity Commission at its Birmingham District Office, which shall disburse such checks upon the execution by each individual of a release, in a form satisfactory to defendant of all such claims arising out of the Equal Pay Act.

5. In the event plaintiff believes that a provision of this Consent Decree has been violated, it shall notify: James P. Alexander, 1400 Park Place Tower, Birmingham, Alabama 35203, (or such other person as Defendant may later designate) in writing and specify the nature of alleged non-compliance. The parties thereafter shall have a period of twenty days to attempt to resolve disputes concerning compliance. In the event the compliance dispute is not resolved, plaintiff shall have the right to seek compliance with the Court.

6. This Court shall retain jurisdiction of this action for purposes of compliance with this Decree for a period of two years. At the termination of two years, Martin, on due notice, may move for dissolution of this Decree and this Decree shall be dissolved upon a showing of substantial compliance.

DONE and ORDERED on this the ———— day of February, 1984.

## EXHIBIT B

### MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

On September 29, 1983, the Equal Employment Opportunity Commission commenced this action against Martin Industries, Inc. ("Martin") to redress an alleged violation of the Equal Pay Act, 29 U.S.C. § 206. In its complaint the EEOC asserts authority to enforce the provisions of the Equal Pay Act pursuant to Sections 16(c)

and 17 under FLSA, 29 U.S.C. § 216(c) and § 217, as amended by Section 1 of the Reorganization Plan No. 1 of 1978, 92 STAT. 3781. Under Reorganization Plan No. 1 of 1978, the statutory responsibility for the enforcement of the Equal Pay Act was ostensibly transferred from the Labor Department to the EEOC.

Reorganization Plan No. 1 of 1978 was enacted pursuant to the Reorganization Act of 1977, 5 U.S.C. 901, et seq., by which Congress purported to grant the President authority to restructure and reorganize the executive branch and its agencies. 5 U.S.C. §§ 901, 903. The President was authorized to present reorganization plans to Congress which either House could veto by a resolution passed by a majority vote.

Recently the Supreme Court in *Immigration and Naturalization Service v. Chadha*, —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), held that the one-House veto device used by Congress to oversee authority delegated to the Executive Branch, without having to resort to the prescribed bicameral and presentment requirements of Article One, § 7, cl. 3., was unconstitutional. *Chadha* was an alien whose nonimmigrant student visa had expired, and he had been ordered to show cause why he should not be deported. The Attorney General suspended the deportation and reported this action to Congress pursuant to a one-House veto clause in the Immigration and Nationality Act, 8 U.S.C. § 1254(c)(2). The House of Representatives vetoed the suspension. When *Chadha* challenged the House's veto, the Supreme Court upheld the Attorney General's suspension. The Supreme Court held that the retention by Congress of the power to veto the act of the Attorney General suspending deportation proceedings violated the constitutional doctrines of separation of powers and the constitutional requirement that legislation be passed by both houses of Congress and presented to the President.

District courts have differed as to the impact of *Chadha* on the transfer of enforcement powers of the Equal Pay and Age Discrimination in Employment Acts to EEOC pursuant to Reorganization Plan No. 1 of 1978 which contained a one-house legislative veto provision.[1] In *EEOC v. Allstate Ins. Co.*, 570 F.Supp. 1224 (S.D. Miss.1983), the District Court for Southern Mississippi, Judge William H. Barbour, Jr., found that the presence of the legislative veto provision in the Reorganization Act of 1977 invalidated the entire Act even though the legislative one-House veto was not used. Therefore, Judge Barbour held that the Reorganization Plan No. 1 of 1978, which contained the provision transferring the authority to enforce the Equal Pay Act to the EEOC is unconstitutional since the Plan was adopted pursuant to the 1977 Act.

The Court in *Allstate* further considered the effect of the absence of a severability clause in the Reorganization Act of 1977. Due to the absence of such a clause in the Act, Judge Barbour decided that he was required to determine "whether Congress would have enacted other portions of the statute in the absence of the invalidated provision." Judge Barbour then engaged in a careful and comprehensive analysis of the legislative history of the Reorganization Act of 1977, holding:

> [T]here is no doubt that Congress intended the one-House veto provision to be an integral and inseparable part of the entire Act such that it would limit the powers of the President to propose and enact reorganization plans. Congress expressed without equivocation its desire to restrict the President's power to reorganize the Executive Branch. Pursuant to this, the entire Act must be held unconstitutional in that the one-House veto provision was enacted as an integral and inseparable part of the grant of power to the President. It is, of course, unfortu-

---

**1.** The conflicting approaches to this issue are represented by *EEOC v. Allstate Ins. Co.*, 570 F.Supp. 1224 (S.D.Miss.1983) and *Muller Optical Co. v. EEOC*, 574 F.Supp. 946 (W.D.Tenn.1983). Because of the contrast between *Allstate* and

*Muller,* this brief attempts to analyze the bases for each Court's decision in order to facilitate this Court's determination as to which view it should adopt and does not purport to be an exhaustive constitutional study.

nate that Congress chose an unconstitutional means by which to review and restrict the exercise of the authority which it granted to the President.

*EEOC v. Allstate,* 570 F.Supp. at p. 1232. The Court's holding, in part, was based on statements by one of the legislation's sponsors, Congressman Brooks, which indicated that Congress intended to retain control over the President's reorganization of the Executive Branch. Further evidence that the one-house veto was essential was found by the Court in the steps taken by Congress to amend the 1977 Reorganization Act to require a vote to be taken on each plan proposed by the President. Also, the Court noted that Congress was aware that the one-House veto provision was of questionable constitutionality. Indeed, Judge Barbour's examination of the legislative history indicated that one of the sponsor's of the Act, due to concern over the constitutionality of the veto provision, introduced a modified bill which omitted that provision. In addition, an amendment was proposed which purported to limit the scope of judicial review to the specific plan before the court; in such instances the proposed amendment provided that if a court found a single plan unconstitutional, the court would be limited to invalidating that one plan instead of all plans which had been passed under that statute. Based on this analysis of the legislative history, the Court concluded that the one-House veto provision was not severable because it was an integral part of the Act in that it enabled Congress to retain control over the President's power to reorganize the Executive branch.

In holding the EEOC lacked authority to institute Equal Pay Act actions Judge Barbour likewise rejected the EEOC's arguments that Congress had ratified the transfer of the enforcement powers of the Equal Pay Act to the EEOC by its subsequent appropriation of funds and other statutory references. In so holding, Judge Barbour relied on the Supreme Court's decision in *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), that Congressional ratification of security clear-ance procedures that were promulgated by the Secretary of Defense without express authorization of either the President or Congress could not be implied from the continued appropriation of funds to finance the program. The Court relied on language in *Greene* which stated:

If acquiescence or implied ratification were enough to show delegation of authority to take actions within the area of questionable constitutionality, we might agree with respondents where the Government's freedom to act is clear, and the Congress and the President has provided general standards of action and has acquiesced in administrative interpretation, delegation may be inferred... Before we are asked to judge whether, in the context of security clearance cases, a person may be deprived to follow his chosen profession without full hearings where accusers may be confronted, it must be made clear that the President or Congress, within their respective constitutional powers, specifically has decided that the imposed procedures are necessary and warranted and has authorized their use. *Cf. Watkins v. United States,* 354 U.S. 178 [77 S.Ct. 1173, 1 L.Ed.2d 1273]; *Skull v. Virginia,* 359 U.S. 344 [79 S.Ct. 838, 3 L.Ed.2d 865]. Such decisions cannot be assumed by acquiescence or non-action. *Kent v. Dulles,* 357 U.S. 116 [78 S.Ct. 1113, 2 L.Ed.2d 1204]; *Peters v. Hobby,* 349 U.S. 331 [75 S.Ct. 790, 99 L.Ed. 1129]; *Ex parte Endo,* 323 U.S. 283, 301–302 [65 S.Ct. 208, 89 L.Ed. 243]. They must be made explicitly not only to assure that individuals are not deprived of cherished rights under procedures not actually authorized, See *Peters v. Hobby, supra,* but also *because explicit action, especially in areas of doubtful constitutionality, requires careful and purposeful consideration by those responsible for enacting and implementing our laws.* Without explicit action by lawmakers, decisions of great constitutional import and effect would be relegated by default to administrators who, under our

system of government, are not endowed with authority to decide them.

*Greene v. McElroy,* 360 U.S. at 506–07, 79 S.Ct. at 1418–19. (Emphasis added). Thus, the Court held that the appropriation of funds by the EEOC was insufficient to indirectly enact legislation which would address the substantive issue of the EEOC's authority to enforce the Equal Pay Act.

The Supreme Court in *TVA v. Hill,* 437 U.S. 153, 190–191, 98 S.Ct. 2279, 2300, 57 L.Ed.2d 117, 144 (1978), reaffirmed that appropriation cannot be equated with ratification or authorization stating:

> We recognize that both substantive enactments and appropriations measures are "Acts of Congress," but the latter have the limited and specific purpose of providing funds for authorized programs. When voting on appropriations measures, legislators are entitled to operate under the assumption that the funds will be devoted to purposes which are lawful and not for any purpose forbidden. Without such an assurance, every appropriations measure would be pregnant with prospects of altering substantive legislation, repealing by implication any prior statute which might prohibit the expenditure. Not only would this lead to the absurd result of requiring Members to review exhaustively the background of every authorization before voting on an appropriation, but it would flout the very rules the Congress carefully adopted to avoid this need. House Rule XXI(2), for instance, specifically provides:
>
> > "No appropriation shall be reported in any general appropriation bill, or be in order as an amendment thereto, for any expenditure not previously authorized by law, unless in continuation of appropriations for such public works as are already in progress. Nor shall any provision in any such bill or amendment thereto changing existing law be in order." (Emphasis added.)

See also Standing Rules of the Senate, Rule 16.4. Thus, to sustain petitioner's position, we would be obliged to assume that Congress meant to repeal pro tanto § 7 of the Act by means of a procedure expressly prohibited under the rules of Congress.

Some courts have likewise rejected the process of ratification by appropriation holding that Congress cannot and does not legislate through the appropriations process. See *Concerned Citizens of Buck Hill Falls v. Grant,* 537 F.2d 29 (3rd Cir. 1976); *National Audubon Society v. Andrus,* 442 F.Supp. 42, 45 (D.D.C.1977); *Atchison, Topeka and Santa Fe Railway Co. v. Callaway,* 382 F.Supp. 610, 620 (D.D.C. 1974). Other courts accept the process of ratification by appropriation only when it can be demonstrated that Congress specifically intended to authorize the act in dispute. *In re Endo,* 323 U.S. 283, 303 n. 24, 65 S.Ct. 208, 219 n. 24, 89 L.Ed. 243 (1944); *D.C. Federation of Civic Assn's. v. Airis,* 391 F.2d 478, 482 (D.C.Cir.1968); *National Wildlife Federation v. Andrus,* 440 F.Supp. 1245, 1250 (D.D.C.1977); *Libby Rod & Gun Club v. Poteat,* 457 F.Supp. 1177 (D.Mont.1978), *aff'd in part, rev'd in part* 594 F.2d 742 (9th Cir.1979).

Relying on the *Allstate* decision recently in *EEOC v. Westinghouse,* No. 83–1209 (W.D.Pa. January 5, 1984), a district court in Pennsylvania dismissed an EEOC Equal Pay Act claim against Westinghouse Electric Corp.

Similarly, in *EEOC v. Pan American World Airways,* No. M18–304 (S.D.N.Y. Oct. 26, 1983), the District Court for Southern New York refused to enforce an EEOC subpoena against Pan Am in an ADEA investigation unless the Secretary of Labor co-signed the subpoena.[2]

**2.** The court, however, declined to decide the constitutional issue stating that appeals from *EEOC v. Allstate* were pending before the Fifth Circuit and Supreme Court. In *EEOC v. Pan Am,* the defendant had contested the EEOC's power to investigate age bias cases or issue subpoenas to aid in its investigation arguing that the one-House veto provision in the Reorganization Act of 1977 invalidated the transfer of ADEA authority to the EEOC.

Two decisions from the Western District of Tennessee, however, hold that the EEOC may enforce the Age Discrimination in Employment Act despite the presence of the one-House legislative veto provision in the 1977 Reorganization Act which also permit-·ted the President to transfer enforcement of ADEA from the Secretary of Labor to EEOC. *Muller Optical Co. v. EEOC,* 574 F.Supp. 946 (W.D.Tenn.1983); *EEOC v. Memphis,* 581 F.Supp. 179, 33 F.E.P. Cases 1089 (W.D.Tenn.1983).[3] In *Muller Optical Co.,* the court refused Muller's request to block enforcement of an EEOC subpoena arguing the EEOC lacked authority to enforce ADEA because the legislative veto provision in the Reorganization Act invalidated reorganization plans implemented under the Act, and that the EEOC therefore could not issue subpoenas to investigate the ADEA charges. The Court refused to interpret *Chadha* to hold that the inclusion of a one-House veto provision in an act invalidated the entire act. Instead the Court relied on the fact that the Supreme Court in *Chadha* had severed the one-House veto provision and left the remainder of the Immigration and Nationality Act intact. Thus, the Court held that the central issue for it to determine was whether the legislative veto provision was severable from the Reorganization Act of 1977.

To determine whether Congress would have enacted the Reorganization Act in the absence of the one-House provision, the Court, "examin[ed] the Act and its legislative history, along with an unavoidable attempt at clairvoyance." Examining the legislative history of the Act, the Court noted Congressional awareness of the questionable constitutionality of the legislative veto and measures taken by Congress to lessen objections to the use of the legislative veto. The Court further cited the views of Congressman Drinnan, appended to the Act's legislative history, House Report at 66–70, which stated:

[The Act] intentionally does not contain a severability clause. The one-House veto provision is deemed to be an integral and necessary part of the legislative scheme for reorganization. That is a proposition to which I will agree.

However, despite the Court's recognition of Congressman Drinnan's comments and the fact of Congress' failure to include a severability clause in the various measures it undertook to insure the Act's validity, the Court summarily concluded that there was no evidence in the Act or in the House Report that the legislature would not have enacted the other provisions of the Reorganization Act absent a one-House legislative veto.

Alternatively the Court in *Muller* held that Congress ratified the transfer of ADEA enforcement to the EEOC by appropriating funds to enforce the Act and by referring to the Reorganization Plan in the Civil Service Reform Act of 1978. In so holding, the Court relied on *Isbrandtsten-Moller Co. v. U.S.,* 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562 (1937), which held that in some situations when both Houses of Congress either pass legislation appropriating funds to implement an executive order or make reference to the executive order in subsequently passed legislation, Congress may ratify by inference the President's action and legitimize any irregularity. *See also Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 118–19, 67 S.Ct. 1129, 1133, 91 L.Ed. 1375 (1947); *Ex parte Mitsuye Endo,* 323 U.S. 283, 303 n. 24 (1944); *Swayne & Hoyt v. U.S.,* 300 U.S. 297, 301–302 (1937). The Court rejected Judge Barbour's reliance upon *Greene v. McElroy* which had held that explicit action was required in areas of "doubtful constitutionality" and refused to infer delegation or ratification. Instead, the Court concluded in *Muller Optical* that no serious constitutional rights were involved. Such reasoning ignores statements in the legislative

---

**3.** *EEOC v. Jackson County,* 33 F.E.P. Cases 963 (W.D.Mo.1983) adopting reasoning of the court in *Muller Optical Co.* as its own likewise held that Reorganization Plan No. 1 of 1978 validly transferred the responsibility for the administration and enforcement of the ADEA from the Secretary of Labor to the EEOC.

history indicating that Congress was aware of the doubtful constitutionality of the one-House veto provision, and took no explicit action to include a severability provision to insure the validity of the remaining parts of the Act.

Moreover, each of the cases relied on by the Court in *Muller Optical* involved the ratification of improper and unauthorized acts as opposed to the ratification by Congress of unconstitutional acts. *Isbrandtsten-Moller Co. v. U.S.*, supra, and *Swayne & Hoyt v. U.S.*, supra, involved two challenges to the transfer by the President under the Legislative Appropriation Act of 1932 of the functions of the Shipping Board to the Department of Commerce. Although both cases held that Congress has the power to ratify by inference unauthorized actions of the President by subsequent appropriations of funds to implement an executive order or references to the executive order in subsequently passed legislation, neither case held that Congress could impliedly ratify unconstitutional executive actions. Indeed, the Supreme Court in both cases relied on the fact that irrespective of any implied ratification, in its subsequent enactment of the Merchant Marine Act, Congress specifically vested in the Department of Commerce the duties formerly vested in the U.S. Shipping Board. Thus, the Supreme Court held that any constitutional questions with respect to the propriety of the transfer were moot.

In *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 118–19, 67 S.Ct. 1129, 1133, 91 L.Ed. 1375 (1947), no constitutional challenge to the President's transfer of authority from one government agency to another was asserted. Rather, the Supreme Court upheld the President's authority to transfer functions from one government agency to another under the War Powers Act. The Court then followed the principles previously enunciated in *Isbrandtsten* and *Swayne* with respect to the ratification of improper or unauthorized acts.

*In re Endo*, 323 U.S. 283, 303 n. 24, 65 S.Ct. 208, 219 n. 24, 89 L.Ed. 243 (1944), involved a challenge to the power of the War Relocation Authority to detain loyal Japanese citizens. In a footnote the Supreme Court recognized the possibility of ratification by appropriation based on *Isbrandtsten and Swayne.* However, the Court qualified its approval commenting that "the appropriations must plainly show a purpose to bestow the precise authority which is claimed."

Subsequent to *Muller Optical,* in *EEOC v. City of Memphis, supra,* Judge Robert McRae, Jr. of the same court likewise found that the veto clause in the Reorganization Act of 1977 was severable and that Congress impliedly ratified the Reorganization Act, thus the EEOC had powers to enforce the ADEA. With respect to the issue of the severability of the one-House veto clause, the Court first attacked the *Allstate* Court's holding with respect to severability stating that it was incorrect in its reliance on *Carter v. Carter,* 298 U.S. 238, 312–313, 56 S.Ct. 855, 873–74, 80 L.Ed. 1160 (1938), for the proposition that the absence of a severability clause suggests the inseverability of that provision. However, it should be noted that the *Allstate* Court merely referred to the absence of a severability clause and only mentioned *Greene* in a footnote. It should also be noted that the *Allstate* Court went on to state that in the absence of such a clause,

> This Court must then 'embark on the elusive inquiry' to determine whether Congress must have enacted other portions of the statute in the absence of the invalidated provisions.

*EEOC v. Allstate,* 570 F.Supp. at p. 1230 (citations omitted). Thus, reliance on *Greene* by the *Allstate* Court was limited. Moreover, the Court in *EEOC v. Memphis,* completely ignored *Allstate*'s detailed analysis of the legislative history of the Act. In contrast, the Court in *EEOC v. Memphis* summarily concluded that in view of Congress' intent to eliminate waste and overlap in bureaucracy through reorganization it was "much more likely that Congress intended these programs to survive instead of perish with the one-House veto

clause." In so concluding Judge McRae not only failed to examine the legislative history of the Act but also ignored the Supreme Court's language in *Chadha* which stated:

> "The fact that a given law or procedure is efficient, convenient and useful in facilitating functions of government standing alone, will not save it if it is contrary to the constitution... [P]olicy arguments supporting even useful 'political inventions' are subject to the demands of the constitution which defines powers and, with respect to this subject, sets out just how these powers are to be exercised.'

*INS v. Chadha,* —— U.S. —— at ——, 103 S.Ct. 2764 at 2781, 77 L.Ed.2d at 340–341.

The Court in *EEOC v. Memphis* further found that Congress by subsequent specific reference to and appropriations for the EEOC had ratified the Reorganization Act. In so holding the Court relied on *Isbrandtsen-Moller, supra, Fleming v. Mohawk Co.,* supra; *Swayne & Hoyt v. U.S.,* supra; *Brooks v. Dewar,* 313 U.S. 354, 360–61, 61 S.Ct. 979, 981–82, 85 L.Ed. 1399 (1941); *Young v. TVA,* 606 F.2d 143, 147 (6th Cir.1979). As it has been previously noted each of these opinions involved improper or unauthorized acts as opposed to unconstitutional acts.[4]

The process advocated by the EEOC in *Muller Optical Co. v. EEOC* and *EEOC v. Memphis* undermines the fundamental structure of our nation and the precise Constitutional definition of the legislative process. As noted in *Chadha:*

> The bicameral requirement, the Presentment clause, the President's veto, and Congress' power to override a veto were intended to erect enduring checks on each branch and to protect the people from the improvident exercise of power by mandating certain prescribed steps. To preserve those checks, and maintain the separation of powers, the carefully defined limits on the power of each branch must not be eroded.

*INS v. Chadha,* —— U.S. —— at ——, 103 S.Ct. 2764 at 2787, 77 L.Ed.2d at 348–49. Any attempt to erode constitutional clarity simply for administrative convenience must fail.

## CONCLUSION

In light of the foregoing discussion, it is apparent that the Reorganization Act of 1977 is unconstitutional due to its inclusion of a one-House legislative veto provision. Thus, Reorganization Plan No. 1 of 1978, which contains the provision allowing the EEOC to enforce the Equal Pay Act is likewise unconstitutional since this plan was adopted pursuant to the 1977 Act. The one-House veto provision may not be severed from the rest of the statute as it was intended to be an integral part of the statute in order to limit the President's power to propose and enact reorganization plans. Thus, since the one-House veto provision is not severable the entire statute is unconstitutional as Reorganization Plan No. 1 was adopted pursuant to the Act. Martin further contends that under *Greene v. McElroy* due to the absence of explicit action by Congress, subsequent congressional appropriation of funds and other statutory references do not ratify the transfer of authority to enforce the Equal Pay Act. For these reasons, the Court

---

**4.** As discussed hereinabove, *Isbrandtsten-Moller v. U.S., Fleming v. Mohawk Co.* and *Swayne & Hoyt v. U.S.* involved cases where the Court held that the Act was constitutional or that any constitutional challenge to the President's actions was moot. Likewise in *Brooks v. Dewar* and *Young v. TVA* no constitutional challenge was involved. Instead, *Brooks v. Dewar* involved a suit by farmers to enjoin the Secretary of the Interior from barring them from grazing their livestock on public lands in default of certain fees and in default of their holding a temporary license. The farmers alleged the Secretary of the Interior acted without authority with respect to temporary licenses. The Supreme Court held that repeated appropriation constituted ratification of the Secretary's powers. In *Young v. TVA*, the Sixth Circuit held that appropriation by Congress of funds for the construction of dams and reservoirs outside the Tennessee River Watershed ratified TVA's construction of the TVA Act as authorizing it to construct the Huntsville nuclear powered electric generating plant although the dam was located outside the watershed of the Tennessee River.

should grant Martin's Motion for Summary Judgment.

/s/   Jame P. Alexander
      James P. Alexander
/s/   James Walker May
      James Walker May
/s/   Eldridge D. Lacy
      Eldridge D. Lacy
      Attorneys for Defendant,
      Martin Industries, Inc.

OF COUNSEL:

BRADLEY, ARANT, ROSE & WHITE
1400 Park Place Tower
Birmingham, Alabama 35203
(205) 252–4500

### MEMORANDUM OPINION AND ORDER

Equal Employment Opportunity Commission (EEOC) has filed a motion to alter or to amend the final judgment of February 24, 1984. EEOC correctly points out that on February 13, 1984, the Fifth Circuit in *EEOC v. Hernando Bank, Inc.*, 724 F.2d 1188 at p. 1188, manifests a disagreement with Judge Barbour's reasoning in *EEOC v. Allstate*, the decision which this Court has found persuasive.

While this Court has great respect for the Fifth Circuit, this Court is not controlled by the Fifth Circuit. In this Court's opinion of February 24, 1984, it took "its stand with Judge Barbour unless and until the *Eleventh Circuit* or the *Supreme Court* finds a way around *Chadha*". (emphasis supplied). This Court has carefully read *Hernando Bank,* and still finds itself on the side of Judge Barbour. This Court fails to see how the Fifth Circuit can ignore the strong, if not the predominant, congressional purpose of maintaining strings on the rule-making function of the executive agencies. The word "reorganization" used by Congress in the heading of the Reorganization Act does not mean *"partial* reorganization" nor "reorganization *except* where we may violate the 'separation of powers'." The Reorganization Act was a comprehensive, integrated scheme, and not a "take your pick" list of reforms. At p.

1191 in *Hernando Bank* the Fifth Circuit says:

A review of the Reorganization Act's legislative history demonstrates congressional awareness of the serious constitutional questions raised by the legislative veto. Congressman Robert Drinan doubted the wisdom of bypassing the normal legislative process and, thereby, of risking a judicial declaration of unconstitutionality. He observed that the Reorganization Act *"intentionally does not contain a severability clause. The one House veto provision is deemed to be an integral and necessary part of the legislative scheme for reorganization"*. Id at 69.

With the exception of Congressman Drinan's comments, nothing in the wording of the Act or in its legislative history indicates that Congress would not have enacted the Reorganization Act without the legislative veto provision or that Congress even considered the issue of severability. (emphasis supplied).

Congressman Drinan was very perceptive and very accurate in his understanding of the mood of Congress. His warning is echoed by Mr. Justice White in *Chadha*. He was certainly in a much better position to assess congressional intent than is a court now looking for a way to avoid toppling those parts of the Reorganization Act, which, if they topple, create the very problem which Congressman Drinan pointed out and which Congress intended to make the courts face. It is condescending of the Fifth Circuit to assume that Congress is so unsophisticated that it does not recognize the office of a severability clause and intended to delegate to the courts the question of which provisions of the Act should be implemented. Here Congress ostentatiously left out a severability clause, manifesting its intent to hang the entire legislative scheme on the constitutionality of all of its various parts, specifically including the important legislative veto. Congress had a perfect right to do what it did, even if its intention has the effect of causing trouble and tweaking the nose of the judiciary.

This Court reiterates. It is willing to take its stand with Judge Barbour unless and until the Eleventh Circuit or the Supreme Court finds a way around *Chadha.* Therefore, EEOC's motion to alter or to amend the final judgment is DENIED.